IN THE UNITED STATES DISTRICT COURT
FOR THEDISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MADELINE GRIFFIN | : | NO. 3:20-CV-589 |
| *Petitioner*, | : | |
| | : | |
| V. | : | |
| | : | |
| ROLLIN COOK, | : | |
| SHARONDA CARLOS, | | |
| | | |
| *Respondents.* | : | APRIL 29, 2020 |

PETITION FOR WRIT OF HABEAS CORPUS AND REQUEST FOR EMERGENCY ADMISSION TO BAIL AND TEMPORARY INJUNCTION

PRELIMINARY STATEMENT

1. Petitioner MADELINE GRIFFIN is a grandmother who suffers from serious medical conditions including metastatic cancer of the head and neck, severe rheumatoid arthritis, anemia, chronic asthma for which she is prescribed inhalers, depressive disorder, hypertension, obesity, sleep apnea, cervical spine stenosis, and a fractured knee that may require reconstructive surgery.

2. Madeline Griffin is currently a prisoner at York Correctional Institution. She seeks immediate release due to the imminent threat of death or serious injury from contracting COVID19.  Madeline Griffin is in custody in violation of the Eighth Amendment to the United States Constitution and the Americans with Disabilities Act.

3. Madeline Griffin's diagnosis of metastatic head and neck cancer indicates a need for regular whole body scans to check for further metastasis and recurrence. The patient's

1

last whole body scan was conducted on January 27, 2017, although she has pain in her throat that indicates an urgent need for a full body scan. In the past, Madeline Griffin's cancer was treated surgically, with radiation therapy and chemotherapy.

4. Madeline Griffin is physically and mentally debilitated to the extent that she is unlikely to present a danger to society.  If she is once again treated for her cancer, the side effects of her therapy will debilitate her to the point that she will only be able to travel to treatment and office visits with an assistant or aid.  As her leg fracture has never been repaired, this injury currently limits her mobility.

5. Madeline Griffin has numerous conditions that according to the CDC put her at very high risk for serious illness or death if she contracts COVID19.

6. COVID19 is a highly infectious novel coronavirus that has infected millions of patients across the globe in the past four months.  The prison environment requires individuals to be in close contact and numerous factors that such as poor sanitation and insufficient medical care contribute to rapid spread of COVID19 in prisons.

7. Madeline Griffin petitions this Court for a writ of habeas corpus to remedy her prolonged confinement in unlawfully dangerous conditions, and also seeks her immediate admission to bail pending a decision on the underlying petition.

8. Ms. Griffin requests that this Court enjoin Respondents from continuing to hold her is conditions that expose her to a high risk of serious disease or death from COVID-19.

## PARTIES

9. The Petitioner Madeline Griffin is currently incarcerated at York Correctional Institution at 201 West Main St. Niantic CT 06357 having entered Department of Corrections custody on July 9, 2014 with a diagnosis of Lymphatic cancer and had been receiving both chemotherapy and radiation treatment for her cancer immediately prior to her incarceration.

10. Respondent Rollin Cook is the Commissioner of Connecticut Department of Corrections and can be served at 24 Wolcott Hill Rd. Wethersfield CT 06109.

11. Respondent Sharonda Carlos is Warden of York Correctional Institution whose business address is 201 West Main St. Niantic CT.

## VENUE

12. Venue in this District is proper under 28 U.S.C. § 1391 because Defendants, at all times relevant to this complaint, are and were based in the District and all activities relevant to this complaint occurred in this District and the events and omissions giving rise to these claims occurred and continue to occur in this district.

## FACTS

13. Madeline Griffin has been in custody of the Connecticut Department of Corrections since July 9, 2014. She was sentenced to 12 years on March 4, 2016 following her conviction on arson charges. Her mother also pled to charges related to the burning of the mother's home to receive insurance proceeds.  The mother of the petitioner

received probation. Including her time incarcerated prior to conviction, Ms. Griffin has served over half of her sentence. Her inmate number is 250395.

14. Ms. Griffin was born in 1971 in Fairfield County Connecticut. At a young age, Ms. Griffin had to obtain a job in order to help her parents provide for the family. She worked at a local grocery store bagging groceries for customers. After tragically losing a child, Ms. Griffin focused on supporting women who suffered from similar events and volunteered at her local church, St. Mary's and Bridgeport Hospital. She later married and had 5 children.

15. While raising her 5 children she worked for Pratt-Read Tool Company making toolson the factory line and attending night classes to obtain a certification in culinary at Bridgeport Community Center. She believed in teaching her children the importance of helping those in need and therefore cooked and delivered food to local shelters and people within her community.

16. Ms. Griffin suffered from a catastrophic tractor trailer accident in 2010. She required extensive facial reconstruction with over 20 surgeries and due to that condition and others was found to be disabled by the Social Security Administration.

17. Madeline Griffin has 5 adult children. She has strong family support. Her eldest son is her medical conservator.  Her next eldest son lives in Woodbridge and has volunteered to provide his mother with a safe place to live, transportation to all medical and probation appointments, and everything to make sure she is able to successfully transition to home confinement and receive proper treatment.

18. Madeline Griffin entered York Correctional Institution with a diagnosis of Thyroid Cancer.  Since her most recent admission to DOC, Madeline Griffin's Thyroid cancer diagnosis has been revised to metastatic cancer of the head and neck. Metastatic

head and neck cancer requires regular full body scans to check for further spread of her cancer through her body.  Department of Correction has not provided her required full body scans in over two years

19. Plaintiff also suffers from a fracture to her leg, degenerative disk disease, arthritis, mental health problems chronic asthma for which she is prescribed inhalers, and other medical conditions including diabetes and hypertension.

20. During her incarceration Ms. Griffin has not received proper diagnosis, care or treatment for her cancer, fractured leg and other conditions.

21. Connecticut Department of Corrections (DOC) has well known systemic deficiencies in the provision of medical care to inmates with serious medical conditions of many kinds and including cancer.

22. Madeline Griffin is at high risk of exposure to COVID-19 in prison.  She is aware that other inmates have respiratory illness in her unit but despite symptoms such as coughing are not being tested for COVID-19. She is also aware that correctional officers have contracted the virus as well. She lives with a cellmate so she cannot self-isolate.  She spends a significant portion of each day on the tier in a crowded space with dozens of other inmates.

23. COVID-19 is a highly infectious novel coronavirus that as of April 29, 2020 had infected over 3 million persons worldwide.[1]

24. Over one million persons have been diagnosed with COVID-19 infection in the United States alone as of April 29, 2020[2]. Connecticut Department of Public Health reported 26,767 COVID-19 cases in Connecticut as of April 29, 2020.

---

[1] (April 29, 2020) https://coronavirus.jhu.edu/map.html

25. No vaccine for COVID-19 exists and the earliest one could be expected to be ready is 12 to 18 months from now.

26. COVID-19 is 10 times deadlier than the common flu. It causes severe disease in approximately 16% of cases. About 20% of infected patients need to be hospitalized.

27. The Centers for Disease Control and Prevention (CDC) have found that the risk of severe disease is higher in persons with medical conditions including moderate to severe asthma, compromised immune systems (which can be caused by a number of factors including cancer treatment), severe obesity, and diabetes.[3]

28. Madeline Griffin has a compromised immune system and all the other conditions listed above.

29. More is being learned about the pandemic daily, but transmission of COVID-19 is though to occur mainly by person to person contact and contact with infected surfaces. Coughing and sneezing produce respiratory droplets which spread COVID-19 to individuals nearby. The virus can remain infectious on surfaces and in the air for hours or days.

30. Interventions recommended by the medical experts include frequent handwashing with soap and water, decontamination of surfaces, identification and isolation of infected persons and close contacts of infected persons, and social distancing.  Social distancing means remaining 6 or more feet away from others.

---

[2] Centers for Disease Control and Prevention, COVID-19: Cases in the U.S. https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html accessed April 29, 2020
[3] Centers for Disease Control and Prevention, Coronavirus Disease 2019(COVID-19): People Who May Be at Higher Risk for Severe Illness (2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html accessed April 29, 2020

31. Prisons are petri dishes for promoting the spread of COVID-19 and other infections. HIV, Hepatitis, and tuberculosis and well-known to have spread through Connecticut prisons. Severe H1N1 outbreaks occurred in prions during the epidemic of 2009.

32. Of the eight largest clusters of COVID-19 cases in the United States, six are in prisons and jails. The largest single outbreak in the entire United States is at an Ohio prison, with 1,937 cases.[4]

33. Connecticut's correctional institutions lack the medical infrastructure to identify, isolate, and treat infected individuals. Medical care is often provided by short-staffed, part-time or under-qualified individuals who lack adequate personal protective equipment. For serious medical needs such as severe COVID-19 infections, the DOC relies upon already taxed outside healthcare facilities.

34. York Correctional Institution lacks sanitary equipment to appropriately disinfect surfaces, and personal protective equipment is either unavailable or not consistently used by staff.

35. Asymptomatic persons can transmit COVID-19 so testing and isolation of only those who present symptoms does not prevent spread.

36. As of April 29, 2020, the date of this filing, 326 DOC staff and 417 inmates have been reported as contracting COVID-19. Three inmates have died of COVID-19 as of the date of filing. [5]This is likely an undercount, as there is no system for reporting or testing staff or inmates and some staff have gone out sick with COVID-19 symptoms but never been tested. Few inmates have been tested and even inmates with symptoms are not always tested.  Since DOC policy is to send infected inmates to Northern CI, a facility

---

[4] *Coronavirus in the U.S.: Latest Map and Case Count* N.Y. TIMES (Apr. 20, 2020)
[5] Connecticut Department of Correction, COVID-19 Tracker (Apr. 29, 2020) https://portal.ct.gov/DOC/Common-Elements/Common-Elements/Health-Information-and-Advisories.

found to have torturous conditions of confinement, inmates may hide their infection and not try to contact medical due to fear of being sent to Northern.

37. There is no statutory exhaustion requirement under 28 U.S.C. sec. 2241.

38. If the Court concludes that there is an exhaustion requirement under 28 U.S.C. sec. 2241, or that Ms. Griffin must proceed on this petition under 28 U.S.C. sec. 2254, then any failure to exhaust should be excused as futile.

39. The Connecticut Judicial Branch is unavailable to provide relief due to the suspension of nearly all court business except "priority 1 business functions" because of COVID-19.

40. Habeas petitions are not a "priority 1 business function" nor are any other mechanisms for inmates in the custody of the State of Connecticut to challenge the legality of their conditions of confinement.

41. Connecticut General Statutes sec. 52-466 requires that a petition for writ of habeas corpus be made to the Superior Court for the Judicial District of Tolland.

42. No courthouse is open in the Judicial District of Tolland as of this filing.

43. There is therefore no state forum available to hear Ms. Griffin's petition, so it is impossible for her to seek relief form her continued confinement through the State of Connecticut.

44. This Court has the inherent authority to admit a state prisoner to bail and order her immediate release pending adjudication of the underlying habeas petition. *Mapp v. Reno*, 214 F.3d 221, 226 (2d Cir. 2001); *see also Rado v. Meachum*, 699 F. Supp. 25, 26 (D. Conn. 1988) "A federal court has the inherent power to release a state prisoner on bail pending resolution of his habeas petition."

45. To qualify for admission to bail, a petitioner much show that "extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." *Mapp*, 241 F.3d at 230.

46. Everywhere in Connecticut residents are urged and required to shelter in place, wear masks, wash hands with soap and water and socially distance. Madeline Griffin can do none of these things and her high risk conditions place her in imminent danger of severe illness or death. These circumstances warrant her immediate release. If she remains incarcerated, there is an unacceptably high risk she will contract COVID-19 and suffer severe illness or death. Immediate release is the only way for her to effectuate her habeas remedy.

## LEGAL CLAIMS

### VIOLATION OF EIGHTH AMENDMENT

47. Petitioner re-alleges and incorporates by reference all allegations above.

48. The Eighth Amendment protects prisoners from cruel and unusual punishment, including conditions of confinement. Prisons have an affirmative duty to provide adequate medical care to prisoners*, Estelle v. Gamble*, 429 U.S. 97, 104 (1976)and officials may not ignore conditions that are likely to cause grave illness in the future, Smith v. Carpenter, 316 F. 3d. 178, 185 (2d Cir. 2003).

49. COVID-19 presents a high risk of serious illness or death for persons like Madeline Griffin who have underlying health conditions. DOC official are aware of the risk and have failed to take reasonable steps to prevent future harm.

50. Prior to COVID-19, Respondents lacked adequate medical staff, personal protective equipment, and medical facilitie to provide medical care to Ms. Griffin. Respondents have not added staff or facilities since the outbreak. Instead medical and other staff are

reduced because of high rates of infection of the staff with COVID-19.  The medical staff themselves present an unreasonable risk of COVID-19 infection to Ms. Griffin and the other inmates.

51. Respondents and other DOC staff continue to knowingly and recklessly subject Ms. Griffin to conditions under which she faces imminent risk of contracting COVID-19. She is at high risk of mortality due to that infection. Respondents' failure to take appropriate steps to abate this risk constitutes deliberate indifference to her serious medical needs and violate her right to be free from cruel and unusual punishment. She was not sentenced to death.

52. The only way to mitigate the risk is to transfer Ms. Griffin to home confinement where she can shelter safely at home with family. See *DeShaney v. Winnebage Cty Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)("[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, an at the same time fails to provide for his basic human needs-eg,… medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.")

53. Respondents are violating Ms. Griffinls Eighth Amendment rights by continuing to confine her in conditions that greatly increase the risk of exposure to COVID-19, which could prove especially deadly to her due to her multiple medical risk factors.

### VIOLATION OF AMERICANS WITH DISABILITIES ACT

54. Petitioner re-alleges and incorporates by reference all allegations above.
55. Title II of the Americans with Disabilities Act ("ADA") prohibits public entities from

discriminating against qualifying individuals with disabilities by depriving them of the opportunity to participate in services, programs or activities of the public entity because of a disability. 42 U.S.C. sec 12132.

56. DOC is a public entity covered by Title II of the ADA. 42 U.S.C. sec 12131.

57. Ms. Griffin's medical conditions qualify as disabilities under the ADA. 42 U.S.C. sec. 12102(1). In that they substantially limit major life activities, including respiratory and circulatory functions, breathing, walking, and vision. 42 U.S.C. sec. 12102(2).

58. Respondents are violating Title II of the ADA by failing to provide Ms. Griffin with reasonable accommodations necessary and available to protect her life-which in this case include granting her immediate release into the care of relatives who are able to ensure her health and safety.

PRAYER FOR RELIEF

WHEREFORE, Petitioner Madeline Griffin respectfully requests that the Court:

a) Admit her to bail and order her immediate release pending disposition of the underlying petition, *see Mapp*, 241 F.3d at 226;

b) Order prompt return by Respondent Warden Sharonda Carlos;

c) Issue a Writ of Habeas Corpus and order her immediate release from custody to home confinement with her family members in Connecticut;

d) Enjoin Respondents from continuing to place her at severe risk of death or illness from COVID-19;

e) Award her costs and reasonable attorney's fees; and

f) Grant such other relief as this Court deems appropriate.

BY: /s/  Paul Garlinghouse
_____
Paul Garlinghouse, Esq.
Attorney for the petitioner
Federal Bar No. ct25143
746 Quinnipiac Ave.
New Haven, CT 06513
Tel: (203) 435-0886