UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MADELINE GRIFFIN, #250395 | : | CIVIL NO. 3:20-CV-0589 (JAM) |
| *Petitioner*, | : | |
| v. | : | |
| | : | |
| | : | |
| ROLLIN COOK, ET AL., | : | |
| *Respondents.* | : | MAY 8, 2020 |

### MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS' MOTION TO DISMISS

The respondents move to dismiss the petitioner's action because this Court lacks jurisdiction. The petitioner brings this Petition for Writ of Habeas Corpus and Request for Emergency Admission to Bail and Temporary Injunction ("Petition") alleging that this Court has subject matter jurisdiction pursuant to 28 U.S.C.§1331, 28 U.S.C. § 1651 and 28 U.S.C. § 2241, or in the alternative, as petitioner suggests, 28 U.S.C. § 2254 (Doc. 3 at 3, ¶13).  As is more fully articulated below, the petitioner's claims fail as she has failed to exhaust her available state court remedies, and she has filed an emergency motion for bond in her state court habeas petition which is still pending. *Griffin v. Commissioner of Correction*, Judicial District of Tolland at Rockville, TSR CV17-4009012-S.[1]

### I.    BACKGROUND

Madeline Griffin is serving a total effective term of twenty (20) years suspended after twelve (12) years, for a total effective  sentence of twelve years to serve, with 5 years' probation for violation of §53a-111 Arson first degree, §53a-48/ 53a-111 Conspiracy to Commit Arson; and §53a-215 Insurance Fraud; said  sentence was imposed in the Bridgeport J.D. Superior Court in docket FBT-

---

[1] A copy of the Petitioner's Emergency Motion For Issuance Of Bond, dated May 6, 2020, is attached as Exhibit A.

CR13-0272120 and  commenced on March 4, 2016.[2] Petitioner is also serving a total effective 5 year

concurrent sentence, in a Danbury JD file, docket no. DBD CR14-0148428 for §53a-139 Forgery, (5

years suspended after 2 with 5 years' probation) and §53a-122 Larceny, (10 years suspended after 5,

with 5 years' probation)  which sentence was imposed in Danbury on March 9, 2016; and 1 year

concurrent for violation of §53a-180c False Incident Report, also from Danbury Superior Court in

docket no,. D03D-CR14-0148230.[3] The petitioner has a present End of Sentence (EOS) date of

January 10, 2026, which may be adjusted due to the application, either granting or forfeiting of Risk

Reduction Earned Credit (RREC), pursuant to Conn. Gen. Stat. §18-98e, which may impact the EOS

date.[4]  According to the DOC computerized records, the petitioner's parole eligibility date is presently

September 15, 2024.  She is not presently eligible for any DOC community release programs as she

has far too much time left to serve on her sentence.[5]

York CI is the only facility for women inmates in the Connecticut DOC system. As of 8:00

AM on May 8, 2020, the York CI facility count has been greatly reduced to 658 inmates.[6]  The

population counts at York CI have been dropping dramatically, as are as follows:

> 1/1/20 = 842
> 2/1/20 = 858
> 3/1/20 = 883
> 4/1/20 = 786
> 5/1/20 = 675

York CI is adhering to CDC Guidelines for correctional facilities, and if a York inmate

complains of possible signs or symptoms of coronavirus infection, for example, feverish over 100

---

[2] The details of the petitioner's arson offense are set forth in the Appellate Court' decision, which states, in part, that the petitioner set fire to her mother's house in Stratford. *State v. Griffin*, 184 Conn. App. 595, 598, 195 A.3d 723, 726, *cert. denied*, 330 Conn. 941, 195 A.3d 692 (2018), and *cert. denied*, 330 Conn. 941, 195 A.3d 693 (2018); *See also* Declaration of Michelle DeVeau with attached mittimuses (Attached Exhibit O)
[3] DeVeau Decl. and Mittimuses (Exhibit O).
[4] *Id.* at ¶5.
[5] *Id*. at ¶6.
[6] Declaration of Acting Warden Daniel Dougherty (Attached Exhibit Q).

degrees, or dry short cough, shortness of breath,  or any other of the possible signs of infection, the two inmates are removed from the cell and brought to our medical unit, where they are separated, and placed in negative pressure rooms, separate from one another. The inmate showing signs or symptoms is then tested. Both inmates are quarantined until the test results come back. York CI has six negative pressure rooms to deal with this situation.[7] Since the onset of the COVID-19 pandemic, York CI has tested about 8-10 inmates, and to the present date, York CI has not had a single case of a positive COVID-19 test.  Therefore, Acting Warden Dougherty attests to a reasonable degree of professional certainty, that York CI is following CDC guidelines for correctional facilities and has significantly reduced the risk of potential coronavirus contagion. Indeed, in his view, there is less risk and greater supervision and surveillance of such infection at York CI then in the general non-incarcerated community.[8]

Despite the petitioner's claims, she has neither exhibited symptomology that would indicate that she has either contracted or needs testing to determine whether she has contracted COVID-19.[9] In fact, although the petitioner does have chronic conditions that have been identified by the CDC as possible risk factors for COVID-19, she is currently being managed as recommended and has been receiving appropriate monitoring, which includes specialist care[10]. Moreover, while the petitioner asserts in her Petition that her "thyroid cancer diagnosis has been revised to metastatic cancer of the head and neck" (Doc. 3 at 5, ¶20), this is a "red herring" and a complete misrepresentation of the petitioner's own medical records. As Dr. Freston notes in both his declaration and attached letter to Dr. Richeson, the Chief Operating Officer at the Connecticut Department of Correction, the petitioner was diagnosed in 2013 with thyroid cancer; this diagnosis, however, is not an active cancer and the

---

[7] *Id*. at ¶25.
[8] *Id*. at ¶26.
[9] Declaration of Dr. Cary Freston at ¶11-12 (Attached Exhibit P).
[10] *Id*. at ¶15.

3

petitioner is currently in remission.[11] Indeed, as of the date of this filing, the petitioner has *not* relapsed, though she continues to be monitored and surveyed by a specialist.[12]

The petitioner also neglects to mention that she was last seen by her Primary Care Physician on April 9, 2020, for a chronic disease appointment.[13] During this visit, both her thyroid and her orthopedic issues were addressed, and follow-up lab work was ordered.[14] For the petitioner to now claim that during her incarceration she has "not received proper diagnosis, care or treatment for her cancer, fractured leg and other conditions" (Doc. 3 at 5, ¶22) is blatantly untrue.

## II.    ARGUMENT

The petitioner  brings this case  habeas action  in which she alleges violations of the Eighth Amendment and the Americans With Disabilities Act, claiming this is a habeas petition under 28 U.S.C.  § 2241, or in the alternative 28 U.S.C. § 2254. (Doc. 3, ¶13).[15]

As a preliminary matter, since the petitioner primarily seeks admission to bail and her immediate release, such a request is not cognizable in a § 1983 action and "cannot be granted in a civil rights action pursuant to section 1983" because it goes to "the fact or duration of a [Plaintiff's] confinement" and therefore "only habeas relief under 28 U.S.C. § 2254(b) with its exhaustion requirement may be employed." *Morgan v. Dzurenda*, No. 3:14-CV-966 SRU, 2014 WL 6673839, at *4 (D. Conn. Nov. 21, 2014) (quoting *Jenkins v. Haubert*, 179 F.3d 19, 23 (2d Cir.1999)); see also *Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973) (habeas corpus was appropriate remedy for inmates seeking restoration of good-conduct-time credits which would shorten the length of their confinement

---

[11] *Id.* at ¶18-19; *see also* Exhibit P-1, generally.

[12] Exhibit P-1, p. 2.

[13] *See* Exhibit P-1.

[14] *Id.*

[15] Petitioner also has filed a money damages action under 42 U.S.C. §1983 in this court. *Griffin v. Semple*, 3:18-2149(JCH), also seeking certain declaratory and injunctive relief. Defendants intend to refile their motion to dismiss directed at the amended complaint.

4

in prison).  The sole federal remedy available to the petitioner, who is a sentenced prisoner is 28 U.S.C.

§2254.  See *Preiser*, 411 U.S. at 500.  ("sole federal remedy is a writ of habeas corpus").  To the extent

petitioner asserts §2241 jurisdiction, such jurisdiction is foreclosed by the Second Circuit's holding in

*Cook v. New York State Div. of Parole*, 321 F.3d 274, 277–78 (2d Cir. 2003).

In *Cook v. NYS Div. of Parole*, the Second Circuit stated, "The fact that Cook invoked section

2241 did not, however, require the district court to treat it as a section 2241 petition. On the contrary,

if an application that should be brought under 28 U.S.C. § 2254 is mislabeled as a petition under

section 2241, *the district court must treat it as a section 2254 application instead*. *James v. Walsh,* 308

F.3d 162, 166 (2d Cir.2002). "[I]t is the substance of the petition, rather than its form, that"

governs. *Id.* The district court correctly treated Cook's petition as an application under section 2254.

By its terms, section 2254 applies to 'application[s] ... in behalf of ... a person in custody pursuant to

the judgment of a State court ... on the ground that [the person applying] is in custody in violation of

the Constitution ... of the United States.' 28 U.S.C. § 2254(a). That characterizes Cook's petition

precisely. *Cf. James,* 308 F.3d at 166–67." *Cook v. New York State Div. of Parole*, 321 F.3d 274, 277–

78 (2d Cir. 2003)(emphasis added).[16]

---

[16] Judge Arterton recently on May 6, 2020, denied a motion to dismiss but failed to correctly analyze the claims and failed to adhere to Second Circuit precedent in *Cook v. New York State Div. of Parole*, 321 F.3d 274, 277–78 (2d Cir. 2003). See *McPherson v. Lamont*, 3:20-534(JBA) (ECF Doc. # 37). Defendants respectfully disagree with Judge Arterton and note that Judge Dooley, also disagrees, as do to the rest of district judges. To the best of undersigned counsel's research, every other district judge in the District of Connecticut properly treats a §2241 petition from a sentenced prisoner as a §2254 petition. See Order to Show Cause, *Hurdle v. Cook*, 3:20-CV-605(KAD)(ECF Doc. #6)(when faced with a Section 2241 petition from a petitioner in state custody who challenges the execution of his sentence, it is proper for the district court to construe the petition as arising under Section 2254. *See Cook*, 321 F.3d at 278; *see also Musciotto v. Nardelli*, No. 3:19-CV-559 (KAD), 2019 WL 5086691, at *3 (D. Conn. Oct. 10, 2019) (construing petition filed under Section 2241 as governed by Section 2254); *Wright v. Lee*, No. 3:09-CV-1206 (SRU), 2016 WL 111405, at *2 (D. Conn. Jan. 11, 2016) ("The petition filed in the second/member case challenges the petitioner's custody pursuant to the 2002 state court convictions for murder and carrying a pistol without a permit on grounds of double jeopardy and false imprisonment. Thus, the petition should have been filed pursuant to 28 U.S.C. § 2254. See *James v. Walsh*, 308 F.3d 162, 166 (2d Cir. 2002) ("[I]t is the substance of the petition, rather than its form, that" governs); *Manns v. Martinez*, No. 3:08-CV-752 (JCH), 2008 WL 5104809, at *1

5

*In re Wright*, 826 F.3d 774, 778 (4th Cir. 2016) collects the views of the various Circuit Courts,

which also includes the Second Circuit view in *Cook, supra*, stating,

> Almost every circuit has addressed some version of the broader question at play
> here—that is, whether convicted state prisoners' petitions challenging the execution of
> a sentence are to be governed by § 2241 or § 2254. The majority view is that § 2241
> habeas petitions from convicted state prisoners challenging the execution of a
> sentence are governed by § 2254. See, e.g., *González–Fuentes v. Molina*, 607 F.3d
> 864, 875–76 n. 9 (1st Cir. 2010); *Greene v. Tenn. Dep't of Corr.*, 265 F.3d 369, 371
> (6th Cir. 2001); *White v. Lambert*, 370 F.3d 1002, 1007 (9th Cir. 2004), overruled on
> other grounds by *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010); *Cook v. N.Y.
> State Div. of Parole,* 321 F.3d 274, 278 (2d Cir. 2003); *Medberry v. Crosby*, 351 F.3d
> 1049, 1062 (11th Cir. 2003); *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001);
> *Crouch v. Norris*, 251 F.3d 720, 723 (8th Cir. 2001); *Walker v. O'Brien*, 216 F.3d
> 626, 633 (7th Cir. 2000); Malchi v. Thaler, 211 F.3d 953, 956 (5th Cir. 2000). The
> minority view is that such challenges arise under § 2241. See *Hamm v. Saffle*, 300
> F.3d 1213, 1216 (10th Cir. 2002).

*In re Wright*, 826 F.3d 774, 778 (4th Cir. 2016).

 Virtually every decision from this District Court similarly holds,  with the exception of

*McPherson*, *see supra*, at footnote 3, that a §2241 petition filed by a sentenced state prisoner must be

treated as a § 2254 petition, *Boyd v. Lantz*, 487 F. Supp. 2d 3, 5 (D. Conn. 2007) ("Boyd's petition

requests relief under both 28 U.S.C. § 2241 and 28 U.S.C. § 2254. Since Boyd challenges the

constitutionality of the calculation of his state prison sentence, the Court considers his petition only

under 28 U.S.C. § 2254."); *Hanton v. Lantz*, No. 3:09-CV-774 (CFD), 2010 WL 2232642, at *4 (D.

Conn. May 27, 2010)(citing *Cook*)( §2241 claims should have been asserted in a § 2254 petition for

writ of habeas corpus); *Wright v. Lee*, No. 3:09-CV-1206 (SRU), 2016 WL 111405, at *1 (D. Conn.

Jan. 11, 2016)  ("A state prisoner ... according to the terms of section 2254 must, bring a challenge to

---

(D. Conn. Dec. 1, 2008) (construing federal prisoner's petition challenging Connecticut state detainer under
IAD as filed under § 2254);  *Channer v. Brooks*, No. 3:99CV2564 (CFD), 2001 WL 91601, at *1 (D. Conn.
Jan. 23, 2001), adhered to on reconsideration, No. 399CV2564(CFD), 2001 WL 1094964 (D. Conn. Sept. 10,
2001)("A petition for a writ of habeas corpus that challenges custody pursuant to a state conviction, therefore,
should be brought pursuant to § 2254.").

the execution of his or her sentence ... under section 2254. A petition under section 2241 is therefore

unavailable to him."). *(citing Cook v. N.Y. State Div. of Parole*, 321 F.3d at 279) "Section 2241,

however, is not available to state prisoners, who must instead petition for habeas relief under 28 U.S.C.

§ 2254." *Boccio v. Arnone*, No. 3:13-CV-1390 (RNC), 2013 WL 6191907, at *1 (D. Conn. Nov. 26,

2013)(citing *Cook*)"[I]f an application that should be brought under 28 U.S.C. § 2254 is mislabeled as

a petition under section 2241, the district court must treat it as a section 2254 application instead."

*Lage v. Chapdelaine*, No. 3:10-CV-1030 (JCH), 2010 WL 4688820, at *1 (D. Conn. Nov. 10,

2010)(also citing *Cook*).

Recently this Court (*Meyer, J.*) in *Bazemore v. Otero*, No. 3:19-CV-00496 (JAM), 2020 WL

1027778, at *3 (D. Conn. Mar. 2, 2020) stated, "A prisoner who alleges that he is in state custody in

violation of the Constitution, laws, or treaties of the United States may seek relief in a federal court

pursuant to 28 U.S.C. § 2254. Although petitions under section 2254 are most commonly brought by

prisoners who seek to challenge the validity of their conviction or sentence, the Second Circuit has

made clear that a state prisoner who seeks to challenge the manner in which his sentence has been

calculated or executed may also proceed by means of a petition under section 2254. See *Cook v. New

York State Div. of Parole*, 321 F.3d 274, 278-79 (2d Cir. 2003)." The late Judge Eginton concluded

that state inmates cannot even challenge conditions of confinement via a § 2254 petition, stating:

> The Second Circuit has entertained habeas corpus petitions by federal prisoners
> challenging the conditions of confinement under federal sentences. See *Thompson v.
> Choinski,* 525 F.3d 205 (2d Cir.2008); *Boudin v. Thomas*, 732 F.2d 1107, 1111 (2d
> Cir.1984). The Second Circuit has not yet extended this ability to persons in state
> custody. See *Calderon v. Choinski*, No. 3:04 cv1475(JCH), 2006 WL 2472954, at *3
> n. 3 (D.Conn. Aug. 25, 2006). This court need not determine whether petitioner
> should be permitted to challenge conditions of confinement in state custody in a
> federal habeas action. Even if the claims were permitted, petitioner has not exhausted
> his state court remedies before filing this action. See *Preiser,* 411 U.S. at 499
> (holding that habeas corpus claim challenging restrictive housing conditions is subject

> to requirement of exhaustion of state remedies); *Calderon*, 2006 WL 2472954, at *3
> n. 3 (noting that prisoner must first seek relief in state court).

*Hargrove v. Dep't Of Correction*, No. 3:09CV876 (WWE), 2009 WL 2372165, at *1 (D. Conn. July 30, 2009). Thus, according to this view, although *federal* prisoners may bring a conditions of confinement claim via a §2241 petition, there is a bright line for state prisoners who must bring their federal conditions claims pursuant to §1983. This Court need only conclude that this is a §2254 petition, and as Judge Dooley recently concluded in *Hurdle,* 3:20-CV-605 (KAD)(ECF Doc. 6)  that "the Court recognizes that Petitioner is entitled to an opportunity to withdraw his Section 2241 petition before it is converted to a Section 2254 petition, *see Cook*, 321 F.3d at 281." The petitioner in this case, like the petitioner in *Hurdle,* has acknowledged that the Court may conclude that he must proceed under Section 2254." (*See* Doc. 3, ¶¶ 13, 40).   Thus, no notice to the petitioner here is required. However, the petitioner here incorrectly asserts that seeking a remedy in state court is allegedly "futile."  This claim has no basis in fact in light of the pending Emergency Motion For The Issuance Of Bond now pending in the habeas court.[17]

The petitioner is also seeking an order from this Court commanding the respondents to "[a]dmit her to bail and order her immediate release pending disposition of the underlying petition…"  (Doc. 3 at 11). The petitioner also requests this Court to "[i]ssue a writ of habeas corpus and order her immediate release from custody to home confinement with her family members in Connecticut." (*Id*. at 12). Respondents deny that this is the exceptionally rare case that deserves, bail, as is further discussed below in section C of this Memorandum.

Noticeably absent from this §2254 petition are necessary allegations regarding the petitioner's efforts to exhaust her state court or administrative remedies and the outcomes of such efforts. Indeed,

---

[17] *See* Exhibit A.

there is no mention of the petitioner's pending state habeas court action.[18] Despite this curious omission, this Court can take judicial notice of any state court actions filed by the petitioner.[19] *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("docket sheets are public records of which the court could take judicial notice.")..

Also notably absent from the petitioner's allegations is any awareness that petitioner has already filed a state court petition.  On May 6, 2020, counsel in the petitioner's state habeas action, Attorney Walter Bansley IV, filed  a Motion for Sentence Modification on behalf of the petitioner in the Judicial District of Fairfield,[20]  in addition to the Emergency Motion for Issuance of Bail he filed in the petitioner's state court habeas action.  In the accompanying letter that was sent to Supervisory Assistant State's Attorney Robert Satti in support of her motion, the petitioner seeks a modification of her criminal sentence in light of  "her multiple health problems, especially asthma, borderline diabetes and cancer…"[21] The very fact that petitioner's state habeas counsel was able to file both  motions in two different state court jurisdictions completely refutes any claim that the state courts are "closed." Instead, the pendency of petitioner's state habeas action, and the emergency motion filed by Attorney Bansley in that matter conclusively demonstrate the state courts are open for such relief. The habeas court is acting extremely expeditiously, as evidenced by the state court habeas judge, the Honorable Tejas Bhatt, entering an Order requiring the respondent to file his response to petitioner's Emergency Motion for Issuance of Bail by no later than 10:00 AM on May 11, 2020.[22] Thus, the habeas court's

---

[18] *See* docket sheet, *Griffin v. Commissioner of Correction*, Judicial District of Tolland at Rockville, TSR CV17-4009012-S (Attached Exhibit B).
[19] *Id.*
[20] Sentence Modification Application dated May 5, 2020 (Attached Exhibit C).
[21] *See* letter dated May 4, 2020, from Attorney Walter Bansley to Supervisory Assistant State's Attorney Robert Satti (Attached Exhibit D).
[22] *See Madeline Griffin v. Commissioner of Correction*, Order on Petitioner's Emergency Motion for Issuance of Bond, dated May 6, 2020 (Attached Exhibit E).

prompt and immediate attention to this motion totally undercuts petitioner's allegation that the habeas court is closed. (Doc. 3 at 8-9, ¶¶ 41-45)

Furthermore, as noted in the Declaration of the Assistant Clerk for Habeas Matters, Kathryn Stackpole, which was filed in the *McPherson* case on March 26, 2020[23], the Judicial Branch posted notice on its website that, in response to the COVID-19 emergency, effective, Monday, March 30, 2020, the Rockville Courthouse would be temporarily closed and matters from Rockville would transfer to the Hartford GA #14 courthouse (Hartford Courthouse).[24] At present, mail from the Rockville Courthouse is being sent to the Hartford Courthouse.[25] On Wednesdays, Ms. Stackpole reviews habeas mail and emergency matters.[26] On Fridays, another habeas clerk reviews habeas mail and emergency matters.[27] All matters which are emergencies are being sent to a habeas judge who reviews the matter and determines how it should be handled.[28] The judge directs that new matters be opened with a Hartford docket number.[29] At present, the Hon. Tejas Bhatt is assigned to handle these tasks.[30] Because these matters are emergencies, the habeas clerk is accepting motions and moving papers that have been scanned, and emailed to her, and then she emails them to Judge Bhatt.[31]

**A.     The Petitioner's Federal Habeas Claims Are Barred For Failure To Exhaust.**

A prisoner must exhaust his or her administrative remedies prior to seeking a federal writ of habeas corpus pursuant to 28 U.S.C. § 2241 and must exhaust state court remedies prior to seeking a 28 U.S.C. § 2254 petition.  *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("Before seeking a federal

---

[23] Declaration of Kathryn Stackpole, Assistant Clerk for Habeas Matters (Attached Exhibit G).
[24] *Id* Id. ¶2.
[25] *Id*. ¶3.
[26] *Id*.
[27] *Id*.
[28] *Id*. ¶4
[29] *Id*.
[30] *Id*.
[31] *See* E-mail from Kathryn Stackpole to Attorney Walter Bansley RE: Accepting Emergency Motion for Issuance of Bond, dated May 6, 2020 (Attached Exhibit F).

writ of habeas corpus, a state prisoner must exhaust available state remedies [pursuant to] 28 U.S.C. § 2254(b)(1)"); *United States v. Smalling*, 644 Fed. App'x 3, 4-5 (2d Cir. 2016) (challenge to execution of sentence must be brought in a section 2241 proceeding, but only "after exhaustion of administrative remedies"); *see also Wilson v. Wells*, No. 3:17CV40(AWT), 2017 WL 6667515, at *2 (D. Conn. Sept. 6, 2017) ("a prisoner must exhaust his or her administrative remedies prior to filing a section 2241 petition or exhaust state court remedies prior to filing a section 2254 petition.").

Not only does the petitioner fail to allege that she has made any efforts to exhaust her administrative or state court remedies as to the claims in the Petition,[32] she completely neglects to mention that she has an ongoing state habeas court matter that has an Emergency Motion for Issuance of Bond[33] pending before that court. *See United States ex rel. Scranton v. New York*, 532 F.2d 292, 294 (2d Cir. 1976) ("While [§ 2241] does not by its own terms require the exhaustion of state remedies as a prerequisite to the grant of federal habeas relief, decisional law has superimposed such a requirement in order to accommodate principles of federalism" that includes that "the prisoner must fairly present his claim in *each* appropriate state court (including a state supreme court with powers of discretionary review)") (emphasis added); *see also Marte v. Berkman*, No. 11-cv-6082 (JFK), 2011 WL 4946708, at *6 (S.D.N.Y. October 18, 2011) ("Although exhaustion of state remedies is not statutorily required under § 2241, decisional law has superimposed such a requirement in order to accommodate principles of federalism…requiring pre-trial habeas detainee to satisfy § 2254's exhaustion requirement…In that respect, at least, § 2241 and § 2254 are indistinguishable.") (internal citations and quotation marks omitted).

---

[32] The state court hears large numbers of habeas petitions raising medical issues claiming eighth amendment violations. See *Faraday v. Comm'r of Correction*, 288 Conn. 326, 328, 952 A.2d 764, 767 (2008); *Sanchez v. Warden*, 214 Conn. 23, 33 570 A.2d 673 (1990); *Arey v. Warden*, 187 Conn. 324, 445 A.2d 916 (1982); *Hunnicutt v. Comm'r of Correction*, 67 Conn. App. 65, 69, 787 A.2d 22, 25 (2001).
[33] *See* Exhibit A.

11

For this reason alone, the petitioner's entire action must be dismissed for want of jurisdiction. *See Wilson*, 2017 WL 6667515, at *2 (dismissing for lack of jurisdiction because "[t]he plaintiff does not allege that he has made any efforts to exhaust his administrative or state court remedies as to the claims in the habeas petition."); *see also Miller v. Brown*, No. 3:18-CV-1823 (JAM), 2019 WL 79432, at *1 (D. Conn. Jan. 2, 2019) (holding the court lacked jurisdiction because "it is apparent that he has yet to exhaust his remedies as to Judge Brown's ruling through an appeal to the Connecticut Appellate Court and Connecticut Supreme Court.") (citing 28 U.S.C. § 2254(b)(1)(A)); *Coleman v. Semple*, No. 3:11CV512 (JBA), 2012 WL 2515541, at *6 (D. Conn. June 28, 2012) (granting motion to dismiss on the ground that the claims are unexhausted).

### 1.   Sentenced Prisoners Must Exhaust Their State Remedies Prior To Seeking Federal Habeas Relief Under 28 U.S.C. § 2254.

"Before filing a petition for writ of habeas corpus in federal court, the petitioner must exhaust his state court remedies." *Fernandez v. Arnone*, No. 3:11-CV-1827 JBA, 2013 WL 870385, at *2 (D. Conn. Mar. 7, 2013) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254 (b)(1)(A)); *see also Green v. Wright*, No. 3:19-CV-52 (CSH), 2019 WL 7879730, at *4–5 (D. Conn. Sept. 10, 2019) ("A prerequisite to federal habeas corpus relief under 28 U.S.C. § 2254 is the exhaustion of available state court remedies.") (citation omitted).   "The Second Circuit requires the district court to conduct a two-part inquiry: first, a petitioner must present the factual and legal bases of his federal claim to the highest state court capable of reviewing it; and second, he must have utilized all available means to secure appellate review of his claims." *Fernandez*, 2013 WL 870385, at *2 (citing *Galdamez v. Keane*, 394 F.3d 68, 73–74 (2d Cir.), *cert. denied*, 544 U.S. 1025 (2005)). "Even if claims are unexhausted, however, the court retains the ability to review and *deny* such claims on the merits." *Id*. (emphasis added) (citing 28 U.S.C. § 2254(b)(2); *Rhines v. Weber*, 544 U.S. 269, 271 (2005)).

"[T]he federal court must assess whether the petitioner 'properly exhausted those [state] remedies, i.e., whether [petitioner] has fairly presented his [or her] claims to the state courts,' such that the state court had a fair opportunity to act." *Green*, 2019 WL 7879730, at *4 (quoting *Galdamez*, 394 F.3d at 73). "This inquiry 'embodies the concept of procedural default.'" *Id*. (quoting *Galdamez*, 394 F.3d at 73). "The procedural default doctrine 'ensur[es] that state courts receive a legitimate opportunity to pass on a petitioner's federal claims and that federal courts respect the state courts' ability to correct their own mistakes." *Id*. (quoting *Galdamez*, 394 F.3d at 73). "Thus, to properly exhaust a federal habeas claim in state court, the petitioner 'must put state courts on notice that they are to decide *federal constitutional claims*.'" *Id*. (quoting *Petrucelli v. Serrano*, 735 F.2d 684, 687 (2d Cir. 1984) (emphasis in original). "The exhaustion requirement 'expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions'—state and federal." *Id*. (quoting *Petrucelli*, 735 F.2d at 687); *see also Coleman*, 2012 WL 2515541, at *1 ('The exhaustion requirement seeks to promote considerations of comity between the federal and state judicial systems.") (citation omitted).

"For purposes of exhaustion, adequate notice to the state court includes: (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Green*, 2019 WL 7879730, at *5 (quoting *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982)). "Requiring such notice is not unreasonably burdensome on state prisoners." *Id*. (citing *Baldwin*, 541 U.S. at 32).

Here, this Court lacks jurisdiction because the petitioner has not alleged, and cannot show, that she has exhausted her remedies in state court.[34]  This failure alone robs this Court of jurisdiction.  *See Saturno v. Mulligan*, No. 3:18CV504(AWT), 2019 WL 1789902, at \*2 (D. Conn. Apr. 24, 2019) ("With respect to the other three grounds, the petitioner has not alleged that there is no opportunity for redress in state court or that the state court process is clearly deficient. Thus, he is not excused from exhausting his state remedies before proceeding in federal court.").  Nothing prevents the petitioner from amending her state court habeas petition to assert, even on an emergency basis, the medical claims she raises in this petition.

### a. There is no excuse for failing to exhaust as the State Courts are open and hearing matters.

"Failure to exhaust may be excused only where 'there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient to render futile any effort to obtain relief.'" *Coleman*, 2012 WL 2515541, at \*1 (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (per curiam)); *see also Ellman v. Davis*, 42 F.3d 144, 149 (2d Cir. 1994) (emphasizing the words "only," "no opportunity," "so clearly deficient," and "futile.").  "A petitioner cannot, however, simply wait until appellate remedies no longer are available and argue that the claim is exhausted."  *Id*. (citing *Galdamez*, 394 F.3d at 73–74).

"Futility is present when there is a 'complete absence of a mechanism for correction of the alleged unconstitutional violation' or the petitioner is 'precluded by an unconscionable breakdown from using the process that exists.'" *Jordan v. Bailey*, No. 13 Civ. 7651, 2013 WL 6233889 (S.D.N.Y.

---

[34] *Pichard v. Connor*, 404 US 270, 275 (1971), ("It has been settled since *Ex parte Royall*, 117 U.S. 241 (1886), that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus."); *see also Pitchess v. Davis*, 421 US 482, 487 (1975) ("Under our decision in [*Picard*] exhaustion of state remedies is required as a prerequisite to consideration of each claim sought to be presented in federal habeas.").

Dec. 1, 2013) (quoting *Francis S. v. Stone*, 995 F. Supp. 368, 380 (S.D.N.Y.1998), *aff'd*, 221 F.3d 100

(2d Cir.2000)).  *See also* Exhibit F, Stackpole email; Exhibit G, Declaration of Kathryn Stackpole.

     A petitioner's ignorance does not excuse the exhaustion requirement.  *See Peterkin v. Bd. of

Pardons & Paroles*, No. 3:19-CV-497 (KAD), 2019 WL 2602962, at *3 (D. Conn. June 25, 2019)

("Simply because he was unaware of his obligation to exhaust his state court remedies, does not excuse

him from having to do so.").  Alleged delay cannot excuse the exhaustion requirement unless the court

finds a violation when weighing the speedy trial factors of *Barker v. Wingo*, 407 U.S. 514 (1972). *See

Roberites v. Colly*, 546 F. App'x 17, 19-20 (2d Cir. 2013) (affirming the district court's dismissal of

§ 2254 petition despite 32-month delay by state appellate courts between filing criminal appeal and

filing habeas petition).  Nor can alleged "procedural obstacles" excuse the exhaustion requirement

when such obstacles are in fact, "reasonable procedural requirements."  *See Saunders v. Comm'r,

Dep't of Correction*, No. 10 CV 410 MRK, 2011 WL 572313, at *2 (D. Conn. Feb. 15, 2011) (quoting

*Ellman*, 42 F.3d at 149).

     The petitioner alleges that "[t]he Connecticut Judicial Branch is unavailable to provide relief

due to the suspension of nearly all court business  except 'priority 1 business functions' because of

COVID-19" and "[h]abeas petitions are not a 'priority 1 business function' nor are any other

mechanisms for inmates … to challenge the legality of their conditions of confinement." (Doc. 1 at 8,

¶¶40-41). This is patently false and misleading, especially as it relates to the petitioner's concurrent

state court case activity.  In the petitioner's state habeas court matter, she has filed, through counsel,

two motions within the preceding three weeks that appear on the docket – an Amended Petition filed

on April 14, 2020 and an Emergency Motion for Issuance of Bond, dated May 6, 2020.[35] Not

surprisingly, the petitioner completely neglects to mention this in her Petition as it further undercuts

---

[35] *See* Docket sheet, *Madeline Griffin v. Commissioner of Correction*, Judicial District of Tolland at
Rockville, TSR-CV17-4009012-S (Exhibit B).

her assertion that "[t]here is … no state forum available to hear [her] petition…" (Doc. 1 at 9, ¶45) While Rockville Superior Court may be closed, it is clear that habeas matters are being handled and addressed properly and as expeditiously as possible.[36] Indeed, Judge Bhatt ordered a response to the emergency motion for bond, in three business days, or by May 11, 2020, at 10:00 AM.[37]

The petitioner's pending Motion for Sentence Modification, which was filed in the Judicial District of Fairfield on May 4, 2020[38] further undermines any assertion the petitioner had no choice but to file her Petition before this Court.  In fact, in that very judicial district, the Presiding Judge for Part-A Criminal Matters, the Honorable Joan K. Alexander, has had a consistent motions docket for the last three weeks, where she has heard various motions for release based upon similar claims related to COVID-19. [39] Notably, Judge Alexander agreed to reduce a defendant's  bond to a promise to appear in court following a motion hearing.[40] It appears that the petitioner, in addition to failing to allege that she has even attempted to exhaust her state court remedies, as required by the statute and precedent, has also seriously misapprehended the current situation in Connecticut State Courts.[41] There is no question that the petitioner is aware that the courts are open and are currently hearing and processing inmate requests for release via a variety of judicial mechanisms, as she has taken advantage of them in both the habeas and criminal courts.

---

[36] *See* Stackpole Decl. (Exhibit G).
[37] *See* Judge Bhatt's Order (Exhibit E).
[38] *See* Motion for Sentence Modification (Exhibit C).
[39] *See* attached dockets, as exemplars from Bridgeport and Hartford Superior Courts,  May 8, 2020, (Attached Exhibit H); *See also* Declaration of Robert J. Cristiano in the *McPherson* case (Attached Exhibit I); indeed, McPherson himself, the lead named petitioner, was released pursuant to the Jail Re-Interview (JRI) procedures and the PTA issued by Judge Alexander. *See* Cristiano Decl.  (Exhibit I); *see also* E-mail from Supervisory Assistant State's Attorney Robert Satti, to Assistant Attorney General Steven Strom, dated May 4, 2020 (Attached Exhibit J) .
[40] https://www.ctpost.com/news/article/Judge-releases-inmate-in-ACLU-lawsuit-15229391.php
[41] *See* Stackpole Decl. (Exhibit G).

Further, counsel from the ACLU and a Yale Law School clinic filed a mandamus action in state court seeking the mass release of thousands of inmates. *See Connecticut Criminal Defense Lawyers Association, et al. v. Lamont, Ned*, et al, Superior Court, Judicial District of Waterbury, Docket No. CV20-6054309.[42] (*CCDLA v. Lamont* or *CCDLA*). The brief history of the *CCDLA* matter demonstrates the full availability of litigation remedies in our state's courts.  ACLU counsel, Attorney Dan Barrett, filed the state court *CCDLA* matter on Friday April 3, 2020, and later that day sent an email to Superior Court Judge James Abrams, who serves as the Chief Administrative Judge for Civil Matters, reporting that the case had been filed and sought emergency relief.  The following morning, a Saturday, Judge Abrams responded to the email indicating that the court was aware of the case and would take "appropriate measures" and later that day the case was transferred from the Hartford Superior Court to the Complex Litigation docket in Waterbury.  The next business day, Monday April 6, 2020, the clerk for the Complex Litigation docket emailed all counsel, provided his personal cellphone and other contact information, and scheduled a status conference call with the judge assigned to the case for two days following, Wednesday April 8, 2020.  The next day, the defendants filed a motion to dismiss and an opposition to the request for mandamus.  Within three weeks, the case was docketed, Respondents filed a motion to dismiss, this motion was argued, and the court (*Bellis, J.*) rendered a decision granting dismissal.[43]  Had the McPherson action been brought in the state court as a class action habeas petition, together with an emergency motion for a Temporary Restraining Order, (TRO) it would have received the same expeditious handling.   TRO matters at all time have been Priority 1 matters in the state courts.[44]; *See also Day, Robert #253376 v. Commissioner of*

---

[42] Available at http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=UWYCV206054309S.
[43] *See* CCDLA Docket and Decision (Attached Exhibit K).
[44] *See* Cristiano Decl., (Exhibit I, at ¶ 10).

*Correction,* Superior Court, Judicial District of Rockville, Docket No. CV17-4008971-S[45] where within seven (7) days the petitioner's habeas motion was filed, objected to, and the presiding habeas judge (*Bhatt, J.*) rendered a decision.[46]   And in New Haven, an inmate named Daniel Greer was recently temporarily released from custody pursuant to his request for bond while his conviction is being appealed.[47]

Inmates like the petitioner not only have access to the state courts to bring actions seeking their release, the courts have accommodated inmates by instituting particularly speedy litigation schedules.[48] Any allegation of futility is completely belied by the prompt and expeditious treatment these matters are currently receiving in state courts.   And any representation to the contrary by the petitioner is bewildering, especially in light of the active participation of petitioner's state habeas counsel, in filing state court motions. Indeed, the district court in *McPherson* misapprehended the state court procedures, and erroneously concluded that there needs to be hundreds, if not thousands of petitions filed in state courts. To the contrary, instead of filing the *CCDLA* action as a mandamus action, had the ACLU chosen to bring a state court habeas petition,  styled it as a class action, together with a motion for a Temporarily Restraining Order (TRO) they would have already concluded their state court action and would likely be on appeal in the Connecticut State Supreme Court if they had filed an expedited substantial public interest appeal.  *See* Connecticut Practice Book §§ 83-1 *et. seq.*;

---

[45] http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV174008971S; a copy of Judge Bhatt's Ruling is attached hereto as Exhibit L for the convenience of the Court.
[46] *See Day* Docket and Decision (Exhibit L).
[47] *State v. Greer*, Decision and Order (Attached Exhibit M).
[48] In addition, there have been numerous motions for immediate release due to COVID-19, as well as motions for bond or for compassionate release, and the state court has treated these motions expeditiously. *See* Cristiano Decl., (Exhibit I) ; *See also, e.g Grimes v Commissioner*, Docket No. TSR-CV20-5000478-S http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV205000478S (motion for immediate release filed April 14, 2020; decided May 4, 2020) The *Grimes* docket sheet and Judge Bhatt's order are attached as Exhibit N**.** On April 29, 2020, Judge Bhatt docketed 3 emergency habeas petitions in Hartford.  The cases are: *Solomon Boyd v. Commissioner of Correction (COC)*, HHD-CV20-5063875; *Douglas Murphy v. COC*, HHD-CV20-5063876; *Malik Nunn v. COC*, HHD-CV20-5066377.

*see also* Conn. Gen. Stat. §52-265a.  The district court in *McPherson* unfortunately was presented with inaccurate information by the petitioners which misled the district court into making unfounded conclusions, not based in fact, but rather based on hearsay assertions, untested by cross-examination.

Connecticut's state courts are providing exceedingly prompt attention to emergency motions, including but not limited to, habeas petitions and emergency motions seeking release or, in criminal matters, emergency reductions in bond, and requests for PTA's, due to COVID-19.  *See Money v. Pritzker,* 2020 WL 1820660 at *22, (N.D. Ill., April 10, 2020) ("To be sure, exhaustion requirements can…be waived when relief is truly unavailable. But waiving them here—when state courts clearly were available …would turn the habeas system upside down.").

As such, the petitioner's assertion that "[t]here is therefore no state forum available to hear [her] petition, so it is impossible for her to seek relief form [sic] her continued confinement through the State of Connecticut" (Doc. 3 at 9, ¶45) is simply inaccurate.

### a.  The current COVID-19 pandemic is no excuse for failing to exhaust.

The petitioner goes into great length to describe the current COVID-19 pandemic and the extraordinary circumstances the state, the prisons, and, in particular, the petitioner faces.  And while the respondents certainly recognize the extraordinary challenges presented by COVID-19, these circumstances do not excuse statutory exhaustion requirements.

Nationwide, inmates are seeking release through several methods both in state and federal courts.  One such method available to federal inmates comes via compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Like § 2254, § 3582 has an exhaustion requirement.[49]  But despite the exigencies arising from the current crisis, courts are not excusing the statutory exhaustion requirement in these cases.

---

[49] 18 U.S.C. § 3582(c)(1)(A): "(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after the defendant has fully exhausted all administrative rights…"*

In *United States v. Raia*, 954 F.3d 594 (3rd Cir. 2020), the Third Circuit held the petitioner's lack of exhaustion to be fatal to his motion for release. The court held "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread…Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id*. at 597.

Similarly, in this District, a petitioner's failure to exhaust amid COVID-19 concerns barred his compassionate release petition. *See United States v. Gamble*, 2020 WL 1955338, at *2-3, (D. Conn., April 23, 2020), *appeal filed*, No. 20-1379 (2d Cir. Apr. 27, 2020). "'While the [c]ommon law (or 'judicial') exhaustion doctrine ... recognizes judicial discretion to employ a broad array of exceptions that allow a plaintiff to bring his case in district court despite his abandonment of the administrative review process,' this array of exceptions—including futility—is simply not available when the exhaustion requirement is statutory." *Id*. (quoting *Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004) (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 58 (2d Cir. 2003)).[50] Federal Courts in districts throughout the country have been denying various requests for release under § 3582 and § 2241 when the petitioner has failed to exhaust, notwithstanding the COVID-19 pandemic.[51]

---

[50] *See also, United States v. Smith,* 3:16-cr-00048 (MPS) (D. Conn. April 17, 2020) (ECF Doc. No. 82 at 4-5). ("for substantially the reasons set forth in *United States v. Roberts*, [No. 18-CR-528(JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020)], I view the exhaustion requirement in § 3582(c) as mandatory and not subject to exceptions for futility or other judge-made exceptions.")*; United States v. Gileno*, No. 3:19CR161 (VAB), 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020) ("As a threshold matter, [defendant] has not satisfied the requirement under 18 U.S.C. § 3582(c)(1)(A) to first request that the Bureau of Prisons file a motion on his behalf and then show that thirty days have passed without any BOP action. As a result, the Court cannot consider his motion to modify his sentence.").

[51] *See, e.g., Furando v. Ortiz*, No. CV 20-3739(RMB), 2020 WL 1922357, at *4 (D.N.J. Apr. 21, 2020)("the Court will dismiss the petition without prejudice for failure to exhaust administrative remedies" when denying § 2241 petition); *United States v. Cox*, No. 418CR00017TWPVTW, 2020 WL 1923220, at *1 (S.D. Ind. Apr. 21, 2020)("Because Mr. Cox has not exhausted his administrative remedies and the Court cannot waive that requirement, his Motion is denied without prejudice."); *Simmons v. Warden, FCI-Ashland*, No. CV 0:20-040-WOB, 2020 WL 1905289, at *3 (E.D. Ky. Apr. 17, 2020)(" Nor may the Court consider a request for habeas

**B.  The Petitioner's Claims Are Barred Under the *Younger* Abstention Doctrine.**

"*Younger*[52] exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution.  This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions, see *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), or that implicate a State's interest in enforcing the orders and judgments of its courts, see *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)." *Sprint Communication, Inc. v. Jacobs,* 571 U.S 69, 73 (2013).

> **1.     This Court should abstain from exercising jurisdiction over this action as this petitioner has pending state court motions in both the criminal trial court as well as the habeas court**

"Although the *Younger* abstention doctrine was born in the context of state criminal proceedings, it now applies with equal force to state administrative proceedings…This doctrine of federal abstention rests foursquare on the notion that, in the ordinary course, a state proceeding

---

relief where Simmons concedes that he failed to pursue any available administrative remedies, much less fully exhaust those remedies, prior to filing his petition."); *Newton v. Louisiana Dep't of Corr.*, No. CV 20-0447, 2020 WL 1869018, at *2 (W.D. La. Apr. 13, 2020)("[I]f Newton seeks to bring this as a habeas action seeking parole, he has not alleged that he exhausted his state court administrative remedies prior to bringing suit."); *United States v. Heath*, No. CR-13-102-SLP, 2020 WL 1957916, at *1 (W.D. Okla. Apr. 23, 2020)("Defendant's [f]ailure to comply with [the] mandatory exhaustion requirement [of § 3582(c)(1)(A)] prevents judicial review of the issue.") (collecting cases); *United States v. Bell*, No. 16-20008-02-DDC, 2020 WL 1923086, at *2 (D. Kan. Apr. 21, 2020) (court lacked jurisdiction over defendant's motion for compassionate release under § 3582(c)(1)(A) based on COVID-19 pandemic due to failure to exhaust administrative remedies where defendant filed motion just one week after he filed a request with the warden, had not yet received warden's response, and 30 days had not elapsed since he submitted the request to the warden); *United States v. Gonzalez*, No. 18-cr-00130-PAB, 2020 WL 1905071, at *2-3 (D. Colo. Apr. 17, 2020) (the judiciary lacks "power to craft an exception" to § 3582(c)(1)(A)'s exhaustion requirement and because defendant's motion failed to indicate warden had responded to administrative request or that 30 days had lapsed from the warden's receipt of such request, motion had to be dismissed for lack of jurisdiction); *United States v. Perry*, No. 18-cr-00480-PAB, 2020 WL 1676773 at *1 (D. Colo. Apr. 3, 2020)(finding court lacked jurisdiction over the defendant's request for compassionate release under § 3582(c)(1)(A) based on COVID-19 pandemic where he did not satisfy exhaustion requirement and defendant failed to identify any "Tenth Circuit case where [a futility or an irreparable harm] exception to an exhaustion requirement has been found in a factually analogous case").

[52] *Younger v. Harris*, 401 U.S. 37 (1971).

provides an adequate forum for the vindication of federal constitutional rights. Therefore, giving the respect to our co-equal sovereigns that principles of 'Our Federalism' demand, we generally prohibit federal courts from intervening in such matters." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (quoting *Younger*, 401 U.S. at 44).

"*Younger* abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Id.*

### a.       There is an active state proceeding.

The first condition is met.  As noted earlier, petitioner's state habeas counsel has not only filed an Emergency Motion for Issuance of Bond[53] with the habeas court, which essentially raises the same federal constitutional issues alleged in this case, he has also filed a Motion for Sentence Modification in the Judicial District in which the petitioner's criminal conviction arises.[54] Thus, the petitioner's federal constitutional claims have not been presented to the state's trial court, and certainly not yet to the state's highest court; she has failed to fully exhaust in state court. While no action has been taken as of the date of this memorandum on either motion, this does not obviate the necessity to "present the factual and legal bases of his federal claim to the highest state court capable of reviewing it" or to utilize "all available means to secure appellate review of [the] claims."  *Fernandez*, 2013 WL 870385, at *2.  Regardless, the first prong of *Younger* is met here. It is indisputable this petitioner has pending state court motions in both the criminal and habeas courts.

---

[53] *See* Exhibit A.
[54] *See* Exhibit C.

**b.      There is an important state interest in that proceeding.**

The second condition is met.  "A state interest is important for purposes of the second *Younger*

abstention factor where 'exercise of the federal judicial power would disregard the comity between

the States and the National Government.'"  *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)

(quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987)).  "In this Circuit, resolution of this

question turns on whether the state action concerns the central sovereign functions of state

government."  *Id*. (quotation omitted).

The State plainly has an interest in the supervision of its prisons and the judicial adjudication

of the wide discretion the state legislature has given its executive branch officers in exercising that

supervision.  *Meachum v. Fano,* 427 U.S. 215, 229 (1976) ("[T]he administration of [prisons] is of

acute interest to the States.").  "As the Supreme Court has cautioned, it is 'difficult to imagine an

activity in which a State has a stronger interest, or one that is more intricately bound up with state

laws, regulations, and procedures, than the administration of its prisons.'  *Woodford v. Ngo*, 548 U.S.

81, 94, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)."  *Swain v. Junior*, No. 20-11622-C, 2020 WL

2161317, at \*5 (11th Cir. May 5, 2020)( internal quotation marks omitted)(granting stay and finding

high likelihood of success on appeal).

 Both the federal and state courts give significant deference to the Commissioner in how to

adequately provide for the safety and security of the inmates under his charge.  *See Pierce v. Lantz,*

113 Conn. App. 98, 106 (2009) ("The courts ... give wide ranging deference to the decisions of the

commissioner in establishing guidelines for the order and discipline of the facilities that she governs");

*Overton v. Bazzetta,* 539 U.S. 126, 132 (2003) (Courts owe "substantial deference to the professional

judgment of prison administrators, who bear a significant responsibility for defining the legitimate

goals of a corrections system and for determining the most appropriate means to accomplish them");

*Washington v. Meachum,* 238 Conn. 692, 733-34 (1996) (Courts are "ill equipped" to manage the "Herculean obstacles" presented when administering the state's prisons).

Similarly, the state has a significant interest in the management and supervision of the state court criminal matters. This Court should apply *Younger* abstention because it "must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006)(other citations omitted). Thus, the second prong for abstention is met here.

> c.    **There is adequate opportunity for judicial review of federal constitutional claims.**

The third condition is also met.  In her Emergency Motion for Issuance of Bond, the petitioner claims, among other allegations, that her rights under the Eighth Amendment have been violated.[55] "[U]nder Art. VI of the Constitution, state courts share with federal courts an equivalent responsibility for the enforcement of federal rights, a responsibility one must expect they will fulfill."  *Schlesinger v. Councilman*, 420 U.S. 738, 755-56 (1975).

As all three of the conditions are met, the *Younger* abstention clearly applies.  As such, even if the petitioner had properly exhausted or if her obligations could be somehow excused, the respondents respectfully submit that this Court should not exercise jurisdiction.

> **C.**

The petitioner, in her Prayer for Relief, requests this Court to "[a]dmit her to bail and order her immediate release pending disposition of the underlying petition..." (Doc. 3, p. 11). The petitioner is a sentenced prisoner.[59] Once an individual has been sentenced, the state courts have held that  she has no Federal or state constitutional, statutory, or common law "right" to bail. *Liistro v. Robinson*, 170

---

[55] *See* Exhibit A at 5. [Footnotes 56 through 58 intentionally omitted]
[59] *See* DeVeau Decl. (Exhibit O).

Conn. 116, 125, 365 A.2d 109 (1976); *State v. Kelly*, Docket No. CR152961, Judicial District of Stamford-Norwalk,  1997 WL 465673 (Conn. Super. Ct. July 29, 1997). "There is no federal constitutional right to bail post sentencing.  *Finetti v. Harris,* 609 F.2d 594, 597 (2d Cir.1979)." *State v. Kelly*, at *2

 Notwithstanding the lack of an absolute right to bail, in exceedingly rare case, the Second Circuit as stated, "A district court has inherent power to enter an order affecting the custody of a habeas corpus petitioner who is *properly before it* contesting the legality of his custody." *Ostrer v. United States,* 584 F.2d 594, 596 n. 1 (2d Cir.1978) (emphasis added). The Second Circuit was careful to point out that it had "consistently, emphasized that this power is a limited one, to be exercised in special cases only." *Mapp v. Reno,* 241 F.3d 221, 226 (2d Cir.2001).  As the Circuit explained *Ostrer,* "a habeas petitioner should be granted bail only in unusual cases, or when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Ostrer,* 584 F.2d at 596 n. 1 (internal quotation marks and citation omitted); *accord Mapp,* 241 F.3d at 226; *see also Grune v. Coughlin,* 913 F.2d 41, 44 (2d Cir.1990)  (noting that "[t]he standard for bail pending habeas litigation is a difficult one to meet: The petitioner must demonstrate that the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective") (internal quotation marks omitted) (alterations in original).

 In *Mapp*, the Second Circuit discussed the history of how it arrived at the principle that federal courts have "inherent power" to admit a habeas petitioner to bail.  But the Court went on to note that the availability of bail to a habeas petitioner is an oddity, quite rare, requiring a showing that is "difficult to meet", and stating:

> "Even as we have acknowledged the authority of the federal courts to grant bail to habeas petitioners, however, we have also, and consistently, emphasized that this power

> is a limited one, to be exercised in special cases only.  As we noted in [an earlier case], a habeas petitioner should be granted bail only in unusual cases, or when extraordinary or exceptional circumstances exist which make the grant of bail <u>necessary to make the habeas remedy effective</u>."

*Mapp* at 226. This last clause is critical. The remedy that the petitioner is seeking by way of her habeas petitions is release (liberty) on the basis that her conviction is illegal.   Her prayer for relief in a conditions case, it seems logical to presume, differs – petitioner is seeking better or different medical treatment   as a remedy, and for a court to order that the State provide those treatment.    That is a showing that must be made, and that is where medical records, the expert testimony, the evidence on the state's efforts to provide satisfactory conditions and so forth come into play.[60] But none of these claims makes bail "necessary to make the habeas remedy effective" with respect to the remedy sought in their habeas petitions. A few weeks ago, the Western District of New York rendered a decision on a motion for release brought in a pending habeas case, and applied *Mapp* to the COVID-19-related claim.  *Hassoun v. Searls,* 202 WL 1819670 (WDNY, April 10, 2020).  Notwithstanding the "special circumstances" of the COVID-19 pandemic the district court denied bail to a civil immigration detainee, and further noted, that  "The Court is unaware of any authority, and Petitioner cites none, suggesting that the Court has a broader authority to order home detention." *Hassoun v. Searls*, No. 1:19-CV-00370 EAW, 2020 WL 1819670, at *5 (W.D.N.Y. Apr. 10, 2020).

Here, the petitioner fails to provide any authority or support for her contention that she be released to bail or to home confinement during the pendency of this action.

### 1.  The petition is not properly before this Court

As a preliminary matter, this Court should decline to even entertain the petitioner's request for release as exhaustion of state court remedies is required before the federal court can entertain a challenge to a state conviction on the merits. *See* 28 U.S.C. § 2254(b)(1). As is discussed above, the

---

[60] *See* Dr. Freston Decl. (Exhibit P).

petitioner has failed to exhaust her state court remedies prior to initiating this action, and thus, her Petition is not properly before this Court. *See United States ex rel. Williams v. La Vallee,* 276 F.2d 645, 648 (2d Cir.1960) (noting that unexhausted claim was not properly before the district court); *Bartholomew v. Mendoza–Powers,* No. 08–CV–1270–IEG(NLS), 2009 WL 1459443, at *4 (S.D.Cal. May 26, 2009) ("A habeas petitioner must exhaust his state court remedies before a habeas petition is properly before the federal court.").

### 2. Even if the petition were properly before this Court, the petitioner fails to prove a likelihood of success

Assuming, arguendo, that the petitioner were properly before this Court, her request for relief must still be denied because, by virtue of failing to exhaust her state court remedies, the claims in her petition do not have a high probability of success necessary to justify releasing her on bail. The petitioner must show "a demonstrated likelihood that the petition will prevail, based upon claims of a substantial nature upon which the petitioner has a high probability of success ... so that victory for petitioner can be predicted with confidence." *United States v. Whitman*, 153 F. Supp. 3d 658, 660 (S.D.N.Y. 2015) (quoting *United States v. Yarmoluk*, No. 96-cr-863 (JSR), 1997 WL 642564, at *1 (S.D.N.Y. Oct. 17, 1997)).

Here, the petitioner has a pending state court habeas action that has not been adjudicated. As is discussed in more detail above, it is well settled that a petitioner must first exhaust available state court remedies before filing a habeas petition in federal court. *See* 28 U.S.C. § 2254(b)(1)(A). As such, the petitioner's decision to bypass the remedies available to her in her state habeas corpus case and instead file this action strips this petition of any likelihood of success.

Additionally, as noted by Judge Bhatt, in his decision in *Day v Commissioner*[61], the petitioner here cannot show that there is a high probability of success or that the petition raises substantial claims.

---

[61] *See* Exhibit L.

The petitioner has made general allegations in her amended petition for writ of habeas corpus, but neither the habeas nor this court can determine, based on the pleadings alone, that the petition has "raised substantial constitutional claims upon which [s]he has a high probability of success." The petitioner's claims are dependent on fact-finding by the habeas court based on its credibility determination of witnesses who have not yet testified. Moreover, the petitioner has not presented admissible medical evidence to either the habeas court or this Court that she is at any risk of COVID infection.[62]

The Dougherty declaration makes clear that York CI is adhering to CDC Guidelines for correctional facilities, and if a York inmate complains of possible signs or symptoms of coronavirus infection, for example, feverish over 100 degrees, or dry short cough, shortness of breath, or any other of the possible signs of infection, the two inmates are removed from the cell and brought to our medical unit, where they are separated, and placed in negative pressure rooms, separate from one another. The inmate showing signs or symptoms is then tested. Both inmates are quarantined until the test results come back. York CI has six negative pressure rooms to deal with this situation.[63] . Since the onset of the COVID-19 pandemic, York CI has tested about 8-10 inmates, and to the present date, York CI has not had a single case of a positive COVID-19 test. Therefore, Acting Warden Dougherty attests to a reasonable degree of professional certainty, that York CI is following CDC guidelines for correctional facilities and has significantly reduced the risk of potential coronavirus contagion. Indeed, in his view, there is less risk and greater supervision and surveillance of such infection at York CI then in the general non-incarcerated community. *Id.* ¶26.

---

[62] *See* Dr. Freston Decl. (Exhibit P); *see also* Dougherty Decl. (Exhibit Q).
[63] *See* Exhibit Q at ¶ 25.

### 3. The petitioner similarly fails to establish extraordinary circumstances necessary to justify admitting her to bail

Even more fatal, the petitioner cannot successfully identify extraordinary circumstances entitling her to the unusual remedy of post-conviction release on bail pending habeas review. In an attempt, it seems, to assert extraordinary circumstances, the petitioner simply relies on one self-serving, unverified statement: "… her high risk conditions place her in imminent danger of severe illness or death... Immediate release is the only way for her to effectuate her habeas remedy.")(Doc. 3 at 9, ¶ 48). Although courts have sometimes found extraordinary circumstances where petitioner is seriously ill, *Johnston v. Marsh,* 227 F.2d 528 (3d Cir.1955), or where petitioner's sentence is scheduled to expire before habeas review would be completed, making immediate release the only way to render the habeas remedy effective. *See, e.g., Hilton v. Braunskill,* 481 U.S. 770, 777 (1987); *LaFrance v. Bolinger,* 487 F.2d 506, 506–08 (1st Cir.1973); *Boyer v. City of Orlando,* 402 F.2d 966, 968 (5th Cir.1968); *Marino v. Vasquez,* 812 F.2d 499, 507–09 (9th Cir.1987), those courts had already granted the habeas petition, and the question was whether release on bail was appropriate while the government pursued its appeal. "The case for bail is much more compelling *after* a district court grants a petitioner's habeas petition, because in those circumstances, it can truly be said that bail is necessary to make the habeas remedy effective." *Ancona v. Lantz,* No. 3:05cv363 (MRK), 2005 WL 839655 (D. Conn., April 8, 2005) (emphasis in original).

Here, the petitioner cites to no medical proof – documentation or otherwise – in support of her claim for relief and has served only six years of a sentence of a twelve year sentence, so there is no danger that her sentence will be completed prior to the disposition of her habeas petition. To the extent that petitioner's contentions that the side effects of any future cancer treatment "…will debilitate her to the point that she will only be able to travel to treatment and office visits with an assistant or aid" (*Id*. at 2, ¶4)  and she "has strong family support" (Doc. 3 at 5, ¶ 19) are offered in support of this

standard, they relevant to whether petitioner has demonstrated extraordinary circumstances and, as such, should not be not considered. Therefore, the petitioner has failed to satisfy this prong, and her requested relief must be denied.

### D. Petitioner Fails To State A Claim For Relief Under the Eighth Amendment or the ADA

Petitioner's assertion of alleged harm from COVID-19 infection is too attenuated and speculative and fails as a matter of common sense and as a matter of law.  Petitioner fails to explain how a generalized fear of contracting COVID-19 is any greater as an incarcerated person, as opposed a member of the general public to going to the grocery store, a pharmacy, or a doctor's office, or riding a public bus.[64] Indeed, it is far more likely that encounters with a contagious person occur outside of the correctional setting, rather than inside prisons where temperatures, and other signs and symptoms of potential illness are being surveilled and monitored twenty-four hours a day, seven days a week, and anyone showing signs or symptoms of possible coronavirus infection are being separated and quarantined for fourteen days.[65]

Further, the allegations the petitioner asserts are analogous to the claims made by the healthy inmate in *Lewis v. Casey*, 518 U.S. 343 (1996). The United States Supreme Court, in discussing the

---

[64] Fear of COVID not enough and is wholly insufficient to state an Eighth Amendment violation. *Riggs v. Louisiana*, 2020 WL 1939168 at *2 (W.D. La, April 22, 2020)("[E]ven if [plaintiff's] claims are properly asserted, whether under § 1983 or *habeas*, several federal courts have considered arguments like those of Riggs and have universally found that prisoners are not entitled to release or transfer based solely on generalized COVID-19 fears and speculation.")  *See, e.g., United States v. Clark*, 2020 WL 1446895 at *3 (D. Kan. March 25, 2020)(Denial of release pursuant to 18 U.S.C. § 3142(i)); *United States v. Eberhart*, 2020 WL 1450745 at *2 (N.D. Cal. March 25, 2020) (Denial of modification of his sentence under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i)); *Carter v. Santa Fe Adult Det. Ctr.*, No. CV 20-00271 RB/GJF, 2020 WL 1550888 (D.N.M. Apr. 1, 2020). (denial of Emergency Injunction)*; United States v. Santana*, No. 1:19-CR-251, 2020 WL 1692010 (M.D. Pa. Apr. 7, 2020) (asthmatic prisoner with sleep apnea denied temporary release); *United States v. Williams*, Crim. No. PWG-19-8, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020) (denying defendant's motion for release from facility where five detainees tested positive for COVID-19 and defendant suffered from allergies and asthma); *United States v. Teon Jefferson*, Crim. No. CCB-19-487, 2020 WL 1332011 (D. Md. Mar. 23, 2020) (denying asthmatic defendant's motion for release due to COVID-19 outbreak).

[65] *See* Dougherty Decl. (Exhibit Q).

issue of inmate access to the courts has admonished that no kind of injunctive relief can ever be considered, nor does any court have subject matter jurisdiction unless there is an actual injury.   The *Lewis* Court discussed the requirement of "actual injury" as follows below, after this footnote:

> [A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary. Insofar as the right vindicated by *Bounds* is concerned, 'meaningful access to the courts is the touchstone,' id., at 823 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.

*Id.* at 351.  Here, Petitioner fails to allege any actual injury.

To satisfy the "objective component," of an Eighth Amendment violation the prisoner must show "an objectively intolerable risk of harm." *Id.* Here, Petitioner  must show that the challenged conditions were "extreme" and presented an "'unreasonable risk of serious damage to his future health' or safety." *Helling v. McKinney*, 509 U.S. 25, 35, (1993). The Respondents do not contest for purposes of this motion, *arguendo*, that the Petitioner can satisfy this objective component. Surely the risk of coronavirus infection is a serious medical concern.

However, to satisfy the "subjective component," the prisoner must show that the prison official acted with deliberate indifference. *Id.*  "Prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.  A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions." Farmer v. Brennan, 511 U.S. 825, 844–45(1994). Swain v. Junior, No. 20-11622-C, 2020 WL 2161317, at *4 (11th Cir. May 5, 2020); *McAfee v. Naqvi*, No. 3:14-CV-410 (VAB), 2017 WL 3184171, at *7 (D. Conn. July 26, 2017)( if DOC physician responded reasonably to

the risk, even if the harm ultimately was not averted, cannot be liable under the eighth amendment)

There is no allegation in the petition that supports an inference that the respondents are not taking the risk of COVID-19 seriously. See Dougherty Decl., Exhibit Q. Rather, the DOC should be commended for their commitment to protect the staff and inmates in the York CI facility, as well as in all DOC facilities, during this COVID-19 pandemic. They are doing their best to balance social distancing with staff and inmate health and safety, and are complying with applicable CDC guidelines applicable to the facility. There is no colorable good-faith basis for any claim related to the subjective prong of the Eighth Amendment. Accordingly, petitioner's Eighth Amendment claims fail as a matter of                                                                                                    law.

Further, the respondents deny that an ADA claim can be the basis of a §2254 petition. Even assuming *arguendo,* such a claim can be made, it also necessarily fails as a matter of law. In *United States v. Georgia*, 546 U.S. 151, 159 (2006), the Supreme Court made clear that inmates may assert ADA claims against a state or individual officer in their official capacities only "for conduct that actually violates the [Eighth] Amendment." Only such claims, where the conduct actually violates the inmate's Eighth Amendment rights and violates the ADA, are valid abrogations of sovereign immunity. *See Bolmer v. Oliveira*, 594 F.3d 134, 146–48 (2d Cir.2010) (citing cases). Under *U.S. v. Georgia,* the Court must consider "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Eighth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Eighth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia* at 883. Should Petitioner fail to establish that the conduct allegedly violative of the ADA also actually violated her rights under the Eighth Amendment, then her claims are barred. In other words, petitioner's ADA rights are co-extensive with her rights under the Eighth Amendment.

Judge Bolden, in granting summary judgment in *Parks v. Blanchette*, 144 F. Supp. 3d 282, 340 (D. Conn. 2015) discussed the ADA and noted that "[w]hile *Georgia* stands for the proposition that an act that violates the Eighth Amendment can state a plausible claim under the ADA, *Georgia*, 546 U.S. at 156, 126 S.Ct. 877, it does not change the fact that, under the ADA and the Rehabilitation Act, the discriminatory act (or inaction) needs to occur because of an inmate's disability. Nor does it change the fact that to survive a summary judgment motion, a plaintiff must provide evidence that he was denied access to 'the services, programs, or activities of a public entity.' 42 U.S.C. § 12132. In *Georgia,* the Court determined that because the claim involved impaired access to 'such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs,' it satisfied this standard. *Georgia*, 546 U.S. at 157, 126 S.Ct. 877. The conditions were ones that would have inhibited any person from carrying out fundamental aspects of human life, including basic hygiene, and were caused by the person's need to use a wheelchair." *Parks v. Blanchette*, 144 F. Supp. 3d at 340.

Here, there is no allegation that the conditions were so unhygienic or problematic that they must have denied the petitioner access to services, programs or activities. Evidence of a general decrease in one's well-being or an increase in anxiety due to fear of COVID-19 infection  without a link to an inability to participate in a service, program or activity provided by a public entity, does not survive summary judgment, or for purposes of the Order to Show Cause, does not state a viable habeas claim under §2254 under the ADA or Rehabilitation Act. *See Carrasquillo v. City of New York*, 324 F.Supp.2d 428, 443 (S.D.N.Y.2004) (granting defendants' motion to dismiss based on claims that plaintiff was placed in a housing unit located far from prison services, requiring him to walk great distances and causing him pain, because plaintiff failed to plead denial of access to a service, program or activity); *see also Alster v. Goord,* 745 F.Supp.2d 317, 340 (S.D.N.Y.2010) (granting summary

judgment on plaintiff's claims based on accommodations he requested for his walking and hearing disabilities, because plaintiff failed to provide evidence that deficiencies in his prison housing denied him access to the benefits of services, programs or activities at the prison but denying summary judgment where plaintiff was unable to shower because of his disability). *Parks v. Blanchette*, 144 F. Supp. 3d 282, 340 (D. Conn. 2015).

Here, as discussed *supra*, petitioner's claims fail to establish that any conduct alleged constituted any constitutional violation.  Accordingly, because petitioner cannot establish that any conduct actually violated her Eighth Amendment rights, her ADA claims are similarly without merit, fail to state a claim, and the petition should be dismissed.

## III.    CONCLUSION

For all the foregoing reasons, the respondents respectfully request that this Motion be granted and this Court dismiss the petitioner's Petition for Writ of Habeas Corpus and Request for Emergency Admission to Bail and Temporary Injunction its entirety.

> RESPONDENTS,
> ROLLIN COOK, *et al*,
>
> WILLIAM TONG
> ATTORNEY GENERAL
>
> BY: */s/ Lisamaria T. Proscino*
> Lisamaria T. Proscino
> Assistant Attorney General
> 110 Sherman Street
> Hartford, CT  06105
> Federal Bar #ct30588
> E-Mail: Lisamaria.Proscino@ct.gov
> Tel: (860) 808-5450
> Fax: (860) 808-5591

BY: */s/ Steven R. Strom*

     Steven R. Strom
     Assistant Attorney General
     110 Sherman Street
     Hartford, CT 06105
     Tel.:  (860) 808-5450
     Fax:  (860) 808-5591
     Federal Bar #ct01211
     E-Mail:  steven.strom@ct.gov

## CERTIFICATION

I hereby certify that on May 8, 2020 a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

     */s/ Lisamaria T. Proscino*
     Lisamaria T. Proscino
     Assistant Attorney General