UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MADELINE GRIFFIN, #250395 | : | 3:20-cv-00589-JAM |
| | : | |
| V. | : | |
| ROLLIN COOK, ET AL. | : | May 15, 2020 |

### MEMO IN OPPOSITION TO MOTION TO DISMISS

Petitioner Madeline Griffin, through undersigned counsel, files this response opposing Respondents' motion to dismiss her petition for lack of jurisdiction.

A.  BACKGROUND

Madeline Griffin had surgery on October 15, 2013, to remove her cancerous thyroid gland (Danbury Hospital Surgical Pathology Report).  Immediately following the surgery, Ms. Griffin was treated with both radiation and chemotherapy.  On July 9, 2014, Madeline Griffin was admitted to the custody of the Connecticut Department of Corrections (CT DOC).  In 2015, she had a full body scan for head and neck cancer with follow up lab tests and appointment. (Confidential Medical Record p. 217 Correctional Managed Health Care Diagnosis).  In 2016, a surgery was performed to remove growths from her vocal cords.  In January 2017, she had a full body scan to follow up on the surgery and check for signs of new growths. (UConn Health Center Thyroid METS Whole Body).  In April 2018, Madeline Griffin was scheduled for a full body scan. That scan never happened.  There is no explanation of this failure in the

1

medical record.  The scan has still not happened as of the date of this filing.  Madeline Griffin is currently experiencing similar symptoms of sore throat and voice changes to what she felt before her 2016 surgery. (Declaration of Medical Conservator Noel Rodriguez).

In their motion to dismiss, Respondents admit that Madeline Griffin has hypertension, diabetes, obesity, sleep apnea and asthma; five conditions included in the CDC guidelines for persons at increased risk of death or serious illness from COVID-19.  They dispute that she has cancer, claiming that diagnosis is "remote" and in "remission".

### B.    Connecticut State Courts Closure

As of this filing, Connecticut State Court's remain closed to all but Priority One matters.  This is to respond to the COVID-19 pandemic. Respondents argue that the Court should dismiss this petition because Madeline Griffin has an active Habeas Petition docketed in Connecticut Superior Court.  This case has been pending since 2017, and does not have a hearing scheduled until 2021.  That is the normal pace of State Habeas matters.  Given the state of Connecticut Court closures and the resulting backlog from cancelling so many hearings over a long period of time, there is a strong likelihood that even the 2021 hearing will be delayed. Currently, there is only one judge who can even read motions filed on an emergent basis due to COVID-19, and there is no prospect of a hearing in time to answer the urgent need for action.  There is an urgent crisis affecting all persons in Connecticut, but neither the Connecticut Courts nor Connecticut DOC have any commensurate response to mitigate the risks to prisoners like Madeline Griffin.

Respondents attached as their exhibit B a habeas petition for Madeline Griffin which was filed in 2017.  As of this filing the trial of that action is set for 2021.  Similarly, the respondents refer to the petition of Robert Day in exhibit L.  This shows that the single judge assigned to process habeas matters related to COVID-19 rejected one such petition for emergency relief.  There is no scheduled hearing on Mr. Day's matter. There is not even a possibility of hearings on sentence modifications, even if they are consented by the prosecutor. The proposed sentence modification prepared by State Appointed Counsel Bansley has not been filed, nor can it be filed until the prosecutor on the criminal matter agrees.  The prosecutor has not given consent as of this filing.

### C. Exhaustion of Administrative Remedies - Futile

Acting Warden Dougherty describes the grievance process at York CI as "available to inmates."  He further states that "Inmates continue to file grievances and they continue to be processed."  Madeline Griffin has filed numerous grievances herself.  Her medical conservator has also filed grievances on her behalf.  (Exhaustion of Remedies 2020) (Exhaustion of Remedies 2019).  These grievances were ignored.  They may even be routinely discarded since Acting Warden Dougherty states that he could find no grievances related to the issues in this petition.

Despite all these grievances, filed in various ways in a desperate attempt to get some relief, Petitioner still lacks a leg brace, many of her medications, and

has not had a body scan for cancer in years.  For purposes of the relief sought here, the Administrative Grievance process at York CI is futile.

State process exhaustion is futile as well because the petitioner is "precluded by an unconscionable breakdown from using the process that exists." Francis S. v. Stone, 995 F. Supp. 368, 380 (S.D.N.Y. 1998), *aff'd* (2d Cir. 2000). It is unconscionable when the extreme and deadly risk, which imperils the petitioner also keeps the State Court Judges from holding hearings.  All other State mechanisms for relief are taking a business as usual approach.  (CT Mirror – Inmates seeking compassionate release face laws not built for COVID-19). Meanwhile the petitioner waits for death.

**The Conditions in the Prison Amid An Unprecedented Epidemic Temporarily Violate Griffin's Due Process Rights**

The Due Process Clause imposes obligations on the government to meet the basic needs of the people it incarcerates, who rely on the government for food, clothing, and necessary medical care. A failure to provide sustenance for inmates "may [] produce physical 'torture or a lingering death.'" *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (internal quotation omitted).

Continuing to detain Madeline Griffin when alternatives exist to protect the community and prevent flight while placing her in mortal danger of contracting and spreading an infectious disease constitute deliberate indifference to Ms. Griffin's health and safety. Ms. Griffin's incarceration, under these new circumstances, constitutes an independent due process violation that the Court must remedy.

The remedy does not affect the length of Madeline Griffin's sentence, merely the place she will serve it temporarily.  This type of remedy is within the power of this Court to grant.

### D. Effect of Decision in McPherson v. Lamont

Respondents acknowledge that Judge Arterton recently considered these very arguments against jurisdiction in denying Respondents' motion to dismiss *McPherson et al. v. Lamont et al.* Civil No. 3:20cv535 (JBA), a suit seeking certification as a class action on behalf of Connecticut Inmates at risk of COVID-19 due to medical conditions and /or age.  They argue that Judge Arterton misinterpreted *Cook v. NYS Div. of Parole*, 321 F.3d 274 (2d Cir. 2003) and invite this Court to issue a contrary ruling on the current motion to dismiss Madeline Griffin's petition. (May 6 Decision Denying McPherson Motion to Dismiss).  Respondents even purport to know all the other Connecticut District Judges disagree with Judge Arterton, and therefore so should this Court.

While a decision of a co-equal District Court Judge is not binding on this Court, the decision of Judge Arterton should persuade this Court.  Since the motion to dismiss McPherson has failed, it would lead to unwarranted confusion if this Court dismissed based on lack of jurisdiction and in the future Madeline Griffin were a class member of a certified class action.  She would meet the criteria for the class if it were certified.

**Medical Conditions**

Dr. Cary Freston a physician employed by the Department of Corrections and licensed by the State of Connecticut, submitted a declaration stating that Madeline Griffin's cancer diagnosis was "remote" and in "remission". The only way to support these statements is by plucking pages from the record in isolation and ignoring glaring holes in the continuity of care.

Madeline Griffin has had cancer since before the date of her admission to CT DOC custody on July 9, 2014. At the time of her 2014 admission, she was still receiving treatment following the total thyroidectomy surgery she underwent in 2013. By the time her cancer required another surgery in 2016, the diagnosis was revised to metastatic head and neck cancer. Technically, she no longer had THYROID cancer, because she lacks all but remnants of her thyroid gland. The revised diagnosis, the one she has as of the day of this filing is metastatic head and neck cancer. Her surgery for metastatic head and neck cancer consisted of removal of not one but two growths from both sides of her voicebox. She could not speak for months, during which her family had no idea what had happened to her. Per her medical records, the follow up to the 2016 cancer surgery was regular full body scans to check for more cancerous growths.

Nowhere in her medical record is her current cancer diagnosis changed to in remission or inactive. Nowhere in her medical record is there a document stating she no longer requires full body scans for cancer.

**Conditions which cause unreasonable risk of death or serious illness from COVID-19**

York CI houses Madeline Griffin, like most of the other female inmates two to a cell.  She uses a common shower.  She spends large parts of the day on a crowded tier.  There are few staff and even fewer medical staff.  The numbers of staff are even lower than normal due to staff out sick during this pandemic. (Declaration of Madeline Griffin).

The "acting" warden of York Correctional Institution (York CI) admits in his declaration, that he has no idea of the extent of COVID-19 infections among his staff and the incarcerated population. He is not even sure if there have been 8, 9 or perhaps 10 tests performed.  Acting Warden Dougherty does not specify what kind of test was performed or claim that test results were received.  He does not even claim that the tests were submitted for analysis.  While in the free world, that would be unlikely, at York CI such things happen.  It would be comparable to noting that Madeline Griffin "refused" a medical appointment when she did not show up in medical because a broken leg prevented her from walking.  It would be very similar to the full body scan of Madeline Griffin in April 2018 that was scheduled but never happened and no one ever re-scheduled it.

The incarcerated population of York CI stood at 658 on May 8, 2020. There is no plan for widespread testing of these inmates.  The few tests performed were only of inmates with symptoms but there is not even confirmation that all those tests have reported a result, positive or negative. There are York CI

staff members with COVID-19 infections who have been confirmed by reported tests and others for whom no test was reported.

Asymptomatic transmission of COVID-19 is a well-known problem, especially in congregate living situations including nursing homes and prisons. The Governor of Connecticut has ordered widespread testing of staff and patients at Connecticut nursing homes. Yet acting Warden Dougherty states that it is his "professional opinion" that in York CI there is less risk of COVID-19 than in the general community.  This statement is disconnected from reality, contravening common sense and scientific knowledge.

Acting Warden Dougherty cites no specific guidelines from the CDC for prisons to support his statement that York CI is following such guidelines.  The most recent guidelines available to the undersigned are from March 2020. [1] These guidelines are out of date in the context the rapidly developing scientific knowledge of COVID-19 and its transmission.

The statement of Dougherty makes no reference to guidelines for testing inmates and staff or for reporting such results as guidance to policy.  It is notable that Acting Warden Dougherty is not even specific as to the number of inmate tests.  Nor does acting Warden Dougherty disclose whether test results have not been received for some or all of the tests.  CT DOC had been reporting on its COVID-19 tracker the number of tests of York CI inmates as 3 tests

---

[1] Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) In Correctional and Detention Facilities. https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf accessed May 15, 2020

administered, one negative result, the remaining two pending for over a week until the format was changed and that information is no longer available.

**SCOPE OF RELIEF**

This court has inherent authority to admit Madeline Griffin to bail immediately pending the resolution of her Habeas Petition. *Mapp v. Reno* 241 F.3d 221 (2d Cir. 2001). The urgent reason to exercise this power now is apparent. Connecticut courts are closed, this Court is only able to hear this matter by Zoom, limiting the ability to present evidence. The York CI does not have the resources to keep Madeline Griffin safe from COVID-19 even if they wanted to. The relief she seeks is temporary and limited to the urgent need. Her family is eager to shelter her and care for her and take her to appointments, medical or otherwise.

The inclusion as Respondent's Exhibit M of Judge Alander's order in State of Connecticut v. Daniel Greer is, among other things, instructive. First, this decision arose after remand of Greer's second appeal with instruction to Judge Alander to reconsider in light of COVID-19. There is no relationship between that unique posture and the situation of Madeline Griffin. Judge Alander, who previously denied motions to release Greer on bond, now finds "the congregate nature of the housing makes social distancing, which is a recognized method of curtailing the virus, impractical." Judge Alander also cites the high rate of COVID-19 in the Connecticut Prison System and the lack of PPE there. The relief Judge Alander granted Greer, contains conditions that it is temporary and reviewable and subject to monitoring. Most important, Greer can attend medical appointments.

Conditional and limited relief is all that Madeline Griffin requires. If she, like Greer, can attend medical appointments and wear a GPS monitor, while sheltering safely at home, the Constitution will be satisfied.

## CONCLUSION

The COVID-19 Pandemic presents an unprecedented risk to persons such as the Petitioner. The policy regarding Federal prisoners in this pandemic is to allow individualized consideration of inmate requests for transfer out of prison confinement to home confinement by Federal Judges. Attorney General William Barr ordered all Federal Correctional Institutions to "maximize" emergency authority to transfer inmates to home confinement. The Court has also appointed Federal Public Defenders to present the inmates' cases free of charge. Just this week, Judge Michael Shea issued an order directing the Federal Correctional Institution Danbury (FCI Danbury) to expedite consideration of inmates for home confinement and to correct its "apparent failure" to obey AG Barr's order. (Forbes article).

When it comes to inmates in Connecticut State confinement, there is no relief. Respondents maintain a business as usual approach with a few inmates carrying buckets of cleaning products and masks made of old uniforms added in. This leaves Madeline Griffin in the path of an oncoming train. Another day of delay may literally prove fatal. The motion to dismiss should be denied because there is no effective relief through the state from the unconstitutional conditions now existing. The state

has failed to mitigate the risk appropriately and has no plan to correct that failure beyond the effort to control the flow of information out to the public.

                                        The PETITIONER,
                                        MADELINE GRIFFIN
                                        By_____/s/_____
                                        Paul A. Garlinghouse
                                        Her attorney
                                        CT25143
                                        746 Quinnipiac Avenue
                                        New Haven, CT 06513
                                        (203) 435-0886
                                        garlinghouselaw@yahoo.com

## **CERTIFICATION**

I hereby certify that on May 15, 2020 a copy of the foregoing was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through that system.

                                        /s/_____
                                        Paul A. Garlinghouse, Esq.