UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MADELINE GRIFFIN, #250395 | : | CIVIL NO. 3:20-CV-0534 (JBA) |
| *Petitioner*, | : | |
| | : | |
| v. | : | |
| | : | |
| ROLLIN COOK, ET AL., | : | |
| *Respondents.* | : | MAY 21, 2020 |

## RESPONDENTS' NOTICE OF STATE COURT DECISION

Respondents respectfully respond to this court's Order, just entered on the docket, ECF #24, and give Notice and attach hereto, as **Exhibit C**, a copy of the Memorandum of Decision, dated May 20, 2020, in the state court habeas matter, DOCKET NO. CV -17-4009012-S, a copy of which is attached hereto, and further give Notice that a copy was attached as **Exhibit C** to the Respondent's Reply Memorandum filed on May 20, 2020.  (See **Exhibit C** attached to Reply Memorandum, ECF Doc. #21).

> RESPONDENTS
> Rollin Cook, *et al*.,
>
> WILLIAM TONG
> ATTORNEY GENERAL
>
> BY: */s/ Lisamaria T. Proscino*
> Lisamaria T. Proscino
> Assistant Attorney General
> 110 Sherman Street
> Hartford, CT  06105
> Federal Bar #ct30588
> E-Mail: Lisamaria.Proscino@ct.gov
> Tel: (860) 808-5450
> Fax: (860) 808-5591
>
> BY: */s/ Steven R. Strom*
> Steven R. Strom
> Assistant Attorney General
> 110 Sherman Street
> Hartford, CT 06105
> Tel.:  (860) 808-5450
> Fax:  (860) 808-5591
> Federal Bar #ct01211
> E-Mail:  steven.strom@ct.gov

## **CERTIFICATION**

I hereby certify that on May 20, 2020 a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Lisamaria T. Proscino*
Lisamaria T. Proscino
Assistant Attorney General

# Exhibit C

| | | |
|---|---|---|
| DOCKET NO. CV17-4009012-S | STATE OF CONNECTICUT<br>SUPERIOR COURT<br>G.A. 19 | SUPERIOR COURT |
| MADELINE GRIFFIN | : | |
| | 2020 MAY 20  A 9: 42 | JUDICIAL DISTRICT<br>OF TOLLAND |
| V. | : | |
| COMMISSIONER OF CORRECTION | : | MAY 20, 2020 |

## MEMORANDUM OF DECISION
## ON PETITIONER'S EMERGENCY MOTION FOR ISSUANCE OF BOND

The petitioner, Madeline Griffin, currently incarcerated to serve a twelve year sentence, has a pending petition for writ of habeas corpus. Due to the ongoing global pandemic caused by the SARS-CoV-2 virus, she has filed an emergency motion seeking to be released on bail, citing her significant medical issues. The respondent objects. Since the habeas court's authority to grant release to a petitioner is extremely limited to circumstances that are not present in this case, the motion must be denied.

### I.  FACTUAL BACKGROUND

Ms. Griffin was sentenced on March 4, 2016, to twenty years' incarceration, suspended after service of twelve years, followed by five years' probation. Her direct appeal became final in 2018. State v. Griffin, 184 Conn. App. 595, 195 A.3d 723, cert. denied, 330 Conn. 941, 195 A.3d 693 (2018). She initiated this habeas corpus proceeding in 2017. On April 14, 2020, counsel filed an amended petition, raising claims of ineffective assistance of counsel. A trial in this matter is currently scheduled to occur on March 8, 2021. On May 6, 2020, Ms. Griffin filed the instant motion for bond, in light of the ongoing COVID-19 pandemic and her myriad health problems, asking this court to exercise its inherent authority to release her. On May 11, 2020, the respondent filed an objection to this motion. Both parties waived their right to further filings and oral argument.

1



Ms. Griffin suffers from the following medical conditions: healed left lower leg fracture, history H-pylori infection, obesity, glaucoma, seasonal allergies, hypertension, metastatic papillary thyroid gland carcinoma - now in remission, non-insulin dependent diabetes mellitus, sleep apnea, history of myocardial infarction, vitamin B 12 deficiency, vocal cord lesion and dysfunction, migraine headaches, cervical spine stenosis, asthma, anemia and depression. Further, according to the respondent's exhibits, medical records indicate that her medical conditions of hypertension, noninsulin dependent diabetes mellitus, sleep apnea, obesity, history of myocardial infarction and asthma place her in a high-risk COVID-19 category. Ms. Griffin is not eligible for any discretionary release by DOC.

Ms. Griffin is housed at York Correctional Institution. As of May 15, 2020, DOC reported on its website that no incarcerated individual at York CI has tested positive for COVID-19.[1] However, as of May 6, 2020, DOC had tested only eight to ten individuals incarcerated at York. Overall, as of May 15, 2020, DOC reports 598 incarcerated individuals who have tested positive for COVID-19. Six incarcerated individuals in Connecticut have died as a result of COVID-19. As of May 19, 2020, in Connecticut, 38,430 individuals have tested positive for COVID-19 and 3,472 have died.[2] Nationwide, the death toll over the past two months is over 90,000 individuals.[3] According to the Centers for Disease Control and Prevention (CDC), individuals with underlying medical conditions are at higher risk for severe illness if they contract COVID-19. These underlying medical conditions include chronic lung disease; moderate to severe asthma; serious heart conditions; people who are

---

[1] https://portal.ct.gov/DOC/Common-Elements/Common-Elements/Health-Information-and-Advisories, Department of Correction website (accessed 5/19/20).
[2] https://portal.ct.gov/Coronavirus, State of Connecticut Coronavirus Portal (accessed 5/19/20).
[3] https://coronavirus.jhu.edu/map.html, Johns Hopkins University Coronavirus Resource Center (accessed 5/19/20).

2

immunocompromised as a result of "cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications;" people with severe obesity; diabetes; chronic kidney disease undergoing dialysis and liver disease. CDC, Groups at Higher Risk for Severe Illness.[4] "High-risk individuals face significantly higher mortality rates should they contract COVID-19 than the general population. According to one report, for example, the mortality rate from COVID-19 is 8.4% for individuals with hypertension, 8.0% for individuals with chronic respiratory disease, 7.6% for individuals with cancer, and 13.2% for individuals with cardiovascular disease." Martinez-Brooks v. Easter, No. 3:20-CV-00569 (MPS), 2020 WL 2405350, at *3 (D. Conn. May 12, 2020).

According to the CDC, the best way to prevent illness is to avoid being exposed to the virus.[5] The virus is spread mainly from person-to-person between people who are in close contact with one another within approximately 6 feet. The transmission occurs via respiratory droplets produced when an infected person coughs, sneezes or talks. These droplets can land in the mouths or noses of people who are nearby or possibly be inhaled into the lungs. COVID-19 can be spread by individuals who do not exhibit any symptoms of illness.[6] In order to protect oneself from getting infected with COVID-19, the CDC recommends that individuals wash their hands with soap and water for at least 20 seconds after being in a public place or after blowing their nose, coughing, or sneezing. If soap and water are not readily available, a hand sanitizer containing at least 60% alcohol may be used. Further, the CDC recommends

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (accessed 5/19/20); see also People Who are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.
[5] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (accessed 5/19/20).
[6] Id.

3

social distancing of at least six feet from other people. The CDC recommends that individuals should not gather in groups and should stay out of crowded places and avoid mass gatherings. According to the CDC "[k]eeping distance from others is especially important for people who are at higher risk of getting very sick." The CDC further recommends cleaning and disinfecting frequently touched surfaces daily.

According to the respondent, common areas at York CI are cleaned multiple times a day and incarcerated individuals are provided with cleaning supplies to clean their own cells. Common telephones are also cleaned multiple times a day. Soap and non-alcoholic hand sanitizer are also provided to the inmates, along with personal protective equipment ("PPE"). All incarcerated individuals have been provided two cloth masks, which they are required to utilize every time they leave their cell. Additional cloth masks are available upon request. Correctional officers are also provided one cloth mask that they must wear and they have access to other PPE like surgical masks and N95 masks depending on the circumstances. The respondent also has policies in place to check the temperature of every employee entering the facility and also of contact tracing upon a positive test. If an incarcerated individual shows symptoms, that individual and her cellmate are to be placed in a "negative pressure room" awaiting a COVID-19 test. The unit the individual was in will also be isolated from the rest of the facility. Units may be disinfected and quarantined depending on the test results.

## II. DISCUSSION

### A. Jurisdiction

The respondent asserts that this court does not have jurisdiction to consider the petitioner's motion. The court disagrees. This court has previously considered this question in Robert Day v. Commissioner of Correction, Superior Court, judicial district of Tolland, Docket

4

No. TSR-CV17-4008971-S (April 20, 2020, *Bhatt, J.*), concluding that the habeas court does have jurisdiction to release incarcerated individuals on bail, pending the disposition of their habeas corpus petition. "Our Supreme Court has held that in the context of a habeas corpus proceeding, the Superior Court may, in the exercise of its discretion, admit a petitioner to bail." Guadalupe v. Commissioner of Correction, 68 Conn. App. 376, 387, 791 A.2d 640, 648 (2002), citing Carino v. Watson, 171 Conn. 366, 371, 370 A.2d 950 (1976) and Winnick v. Reilly, 100 Conn. 291, 123 A. 440 (1924). See also Rose v. Nickerson, 29 Conn. Supp. 81, 271 A.2d 855 (1970) (holding that superior court has authority to release habeas petitioner on bail while petition is pending in case where petition filed after conviction challenging parole violation). In Connecticut, "[t]he power to admit to bail after conviction is not a statutory but a common-law power; the constitutional provision does not apply; bail is then a matter of absolute discretion, to be exercised by the court, however, with great caution, and rarely to be allowed when the crime is serious." (Citation omitted; internal quotation marks omitted.) Carino v. Watson, supra, 171 Conn. 368-69. While "the power to admit to bail is inherent in the court so long as the prisoner is in its custody; that is, until he is taken in execution [. . .] where, as in this state, a review of the judgment by a court of errors is a matter of right, there must be power in the courts to stay execution, and, if the special circumstances of the case justify it, to admit to bail." (Citation omitted; internal quotation marks omitted.) Id. 369.

None of these cases, however, involve the factual scenario present in this case: a petitioner who, validly convicted and serving her sentence, nevertheless seeks release on bail while her petition for writ of habeas corpus has not yet been decided by the habeas trial court. Carino v. Watson and Winnick v. Reilly both involved a petition for writ of habeas corpus challenging the legality of extradition proceedings to New Jersey and in both those cases the

5

petitioners sought release on bail while their challenge to extradition was resolved. In Guadalupe v. Commissioner of Correction, the petitioner sought to be released on bail from his Connecticut conviction so that he may be transferred to federal custody. However, in Guadalupe, the court assumed, without deciding, that a habeas court has the authority to release a petitioner on bail. As noted above, Rose v. Nickerson involved a habeas corpus challenge to the petitioner's detention on a parole violation.

While there is no case precisely on point in Connecticut, federal courts have a well-developed body of caselaw on this subject, which provides appropriate guidance. "The question of whether the federal courts have inherent power to grant bail in any case where they may properly assert jurisdiction (whether it be criminal or involving alien deportation) is by no means a novel one. In fact, it has divided the federal courts for over a century." Mapp v. Reno, 241 F.3d 221, 224–25 (2d Cir. 2001). "One of the inherent powers of the judiciary with regard to proceedings before it has been the admission of a prisoner to bail where, in the exercise of his discretion, the judge deems it advisable. It is clear that at common law courts had the inherent power to grant bail. See, e.g., Queen v. Spilsbury, (1898) 2 Q.B. 615, 620. This authority was exercised in habeas corpus cases pending decision on the merits. In re Kaine, [14 How. 103, 133, 55 U.S. 103, 133, 14 L. Ed. 345 (1852)] (dissent); Barth v. Clise, [12 Wall. 400, 402, 79 U.S. 400, 402, 20 L. Ed. 393 (1870)]; 16 English & Empire Digest 268 (1923). Our Federal judiciary has consistently recognized that at common law this inherent power existed. See, e.g., United States ex rel. Carapa v. Curran, [297 F. 946, 954, (2d Cir. 1924)]; United States

v. Evans, C.C., [2 F. 147, 152 (1880)]; Ewing v. United States, [240 F. 241, 248 (6th Cir. 1917)]." Johnston v. Marsh, 227 F.2d 528, 531 (3d Cir. 1955).[7]

In Mapp v. Reno, the Second Circuit reaffirmed that the federal courts have inherent authority to release habeas petitioners on bail pending disposition of the federal petition. See also Ostrer v. United States, 584 F.2d 594, 596 n. 1 (2d Cir.1978); Calley v. Callaway, 496 F.2d 701, 702 (5th Cir.1974) (per curiam); Baker v. Sard, 420 F.2d 1342, 1343 (D.C.Cir.1969) (per curiam ) ("[r]elease is available in a habeas corpus action"); Johnston v. Marsh, supra, 227 F.2d 531 ("[o]ne of the inherent powers of the judiciary with regard to proceedings before it has been the admission of a prisoner to bail where, in the exercise of his discretion, the judge deems it advisable."); Mitchell v. Bell, 458 F. Supp. 1044, 1049 (M.D. Ala. 1978) ("It is firmly established that it is within the inherent power of the court to authorize bail pending hearing and decision on a petition for writ of habeas corpus."); Principe v. Ault, 62 F. Supp. 279, 281 (D. Ohio 1945) (collecting cases). More recently, a federal district court exercised its authority to release a habeas petitioner while the habeas petition had not been resolved, in light of COVID-19. Martinez v. DelBalso, No. CV 19-5606, 2020 WL 1939717 (E.D. Pa. Apr. 22, 2020).

Based on the foregoing, this court concludes that it has the authority to consider the petitioner's motion.

---

[7] In Johnston v. Marsh, the Third Circuit briefly considered, but did not decide, whether the following language in 28 U.S.C. § 2243 gave courts the *statutory* right to set bail in pending habeas corpus petitions: "The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." This language is closely analogous to that found in Conn. Gen. Stat. §52-470, which directs that "(a) The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments in the case, and shall inquire fully into the cause of imprisonment and thereupon dispose of the case as law and justice require."

7

B. Standard

The habeas court's ability to set bail while the petition for writ of habeas corpus has not yet been adjudicated is to be exercised with "great caution," only when "special circumstances" require it and "rarely" when the "crime is serious." "The standard for bail pending habeas litigation is a difficult one to meet." Grune v. Coughlin, 913 F.2d 41, 44 (2d Cir. 1990). A petitioner must demonstrate two things: first, that "the habeas petition raise[s] substantial claims" and second, "that extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." Id. Thus, bail pending adjudication of a habeas corpus petition may be granted "only when the petitioner has raised substantial constitutional claims upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." Calley v. Callaway, supra, 496 F.2d 702; Mapp v. Reno, supra, 241 F.3d 226.[8] See also Aronson v. May, 85 S. Ct. 3, 13 L. Ed. 2d 6 (1964) (*Douglas, J.* on application for bail) (special reason for granting bail requires showing that "the pending appeal presents substantial questions" and also that "there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice."); Benson v. State of California, 328 F.2d 159, 162 (9th Cir. 1964) ("It would not be appropriate for us at this stage of the proceeding to enlarge this petitioner on bail even if we found that the allegations of his petition for habeas corpus made out a clear case for his release. Something more than that is required before we would be justified in granting bail.").

---

[8] Some courts separate the Mapp test into three factors: "(1) whether substantial claims are set forth in the habeas corpus petition; (2) whether the petitioner has demonstrated a likelihood of success on the merits of his or her petition; and (3) whether there are extraordinary circumstances attending the petitioner's situation which would require release on bail in order to make the writ of habeas corpus effective." (Citation omitted.) Hassoun v. Searls, No. 1:19-CV-00370 EAW, 2020 WL 1819670, at *6 (W.D.N.Y. Apr. 10, 2020).

8

The court recognizes that, generally speaking, the current pandemic presents extraordinary circumstances. Coupled with Ms. Griffin's medical conditions and high risk of severe illness, the court finds that "extraordinary circumstances" exist in this case. Cf. Calley v. Callaway, supra, 96 F.2d 702 ("examples of extraordinary circumstances are serious deterioration of the petitioner's health while incarcerated..."). Certainly, numerous federal district courts have granted petitioners compassionate release, finding that the risk of COVID-19, along with underlying health conditions, constitute the "extraordinary and compelling reasons" required by 18 U.S.C. § 3553 (a). See e.g. United States v. Foreman, No. 3:19-CR-62 (VAB), 2020 WL 2315908 (D. Conn. May 11, 2020); United States v. Rivernider, No. 3:10-CR-222 (RNC), 2020 WL 2393959 (D. Conn. May 12, 2020); United States v. McCarthy, No. 3:17-CR-0230 (JCH), 2020 WL 1698732 (D. Conn. Apr. 8, 2020); United States v. Colvin, No. 3:19CR179 (JBA), 2020 WL 1613943 (D. Conn. Apr. 2, 2020). However, the standard employed by federal courts in granting compassionate release differs from that which must be employed by a habeas court in deciding whether to set bail. For instance, in addition to the underlying medical conditions, federal courts also consider the length of time a petitioner has left to serve and the risk they pose to society upon release. While the time left to serve on a sentence is a factor a habeas court may consider in setting bail, see Boyer v. City of Orlando, 402 F.2d 966 (5th Cir. 1968) (120 days left on sentence), the habeas court does not reach that consideration without first making a finding of a high probability of success on a substantial constitutional claim. The instant motion must be denied because Ms. Griffin cannot demonstrate that there are "substantial constitutional claims" upon which she has a "high probability of success."

Preliminarily the court addresses exactly what is the constitutional claim that it can consider. In the amended petition, the only claim alleged is a sixth amendment ineffective assistance of counsel claim. In the emergency motion, Ms. Griffin also relies on the eighth and fourteenth amendments. The respondent objects and argues that this court should not consider either of the eighth and fourteenth amendment claims since they were not raised in the amended petition. Generally, this court would agree with the respondent that the eighth and fourteenth amendment claims are not in the operative petition and cannot be properly considered by the court. However, given the unique, extraordinary and exigent circumstances of the COVID-19 pandemic, judicial efficiency requires that the court consider all of the claims raised in the emergency motion. Respondent has been provided notice of those claims and has submitted an objection and supporting affidavits in opposition to those claims.

Thus, Ms. Griffin asserts that she has demonstrated a high probability of success on establishing three different constitutional violations: first, a sixth amendment violation due to ineffective assistance of counsel; second, an eighth amendment violation for the conditions of her confinement and third, a fourteenth amendment due process violation.

Her claim falls short on all three counts. First, she cannot show that there is a high probability of success on the ineffective assistance of counsel claim. While Ms. Griffin has alleged deficiencies in her counsel's representation of her, resulting in an unconstitutional conviction, the court cannot determine, at this stage, based only on the general allegations made in the amended petition, that she has "raised substantial constitutional claims upon which she has a high probability of success." Ms. Griffin's claims are dependent on fact-finding by this court based on its credibility determination of witnesses who have not yet testified. Compare Boyer v. City of Orlando, supra, 402 F.2d 966, in which Boyer was sentenced to serve a 120

day sentence and claimed that he had not been represented by counsel in the underlying proceedings and had not waived his constitutional right to counsel and Mapp v. Reno, supra, 241 F.3d 221, in which the petitioner claimed that "that § 440(d) of the [Anti-Terrorism and Effective Death Penalty Act] could not be applied to aliens whose convictions preceded the effective date of that statute." In those cases, extensive fact-finding based on credibility determinations was not required to determine whether there existed a high probability of success. See also Martinez v. DelBalso, supra, in which the petitioner and the state provided documentation suggesting that crucial exculpatory information was withheld from the defense and the state joined in the petitioner's request for bail. There is no such information here from which this court can conclude that there is a high probability of success.

The third constitutional basis is inapplicable. The fourteenth amendment is the vehicle to raise a challenge to conditions of confinement of individuals held in pre-trial confinement, whereas sentenced individuals must raise challenges pursuant to the eighth amendment. Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). Ms. Griffin has been sentenced and thus her claim must be analyzed pursuant to the eighth amendment.

To succeed on an eighth amendment claim of a violation of the conditions of confinement, a petitioner must demonstrate that by virtue of their deliberate indifference to an inmate's serious medical needs, correctional officials refuse to provide care or treatment to that inmate. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Faraday v. Commissioner of Correction, 288 Conn. 326, 328, 952 A.2d 764 (2008). Thus, in order to succeed on such a claim, a petitioner must prove deliberate indifference to his serious medical needs. Estelle v. Gamble, supra, 429 U.S. 104.

The standard of deliberate indifference has both subjective and objective components. First, the deprivation alleged must be, objectively, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154, 115 S. Ct. 1108, 130 L. Ed. 2d 1074 (1995); Faraday v. Commissioner of Correction, supra, 288 Conn. 338. With respect to the objective component of the deliberate indifference standard, the term "sufficiently serious" has been described as "a condition of urgency, one that may produce death, degeneration, or extreme pain." (Internal quotation marks omitted.) Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996); Nance v. Kelly, 912 F.2d 605, 607 (2d Cir.1990) (*Pratt, J.*, dissenting); Archer v. Dutcher, 733 F.2d 14, 16–17 (2d Cir.1984) ("extreme pain"); Todaro v. Ward, 565 F.2d 48, 52 (2d Cir.1977) ("physical torture and lingering death"). "The types of conditions which have been held to meet the constitutional standard of serious medical need include a brain tumor, Neitzke v. Williams, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); broken pins in a hip, Hathaway v. Coughlin, 841 F.2d 48 (2d Cir. 1988); premature return to prison after surgery, Kelsey v. Ewing, 652 F.2d 4 (8th Cir. 1981); diabetes requiring special diet, Johnson v. Harris, 479 F. Supp. 333 (S.D.N.Y.1979); a bleeding ulcer, Massey v. Hutto, 545 F.2d 45 (8th Cir. 1976); and loss of an ear, Williams v. Vincent, 508 F.2d 541 (2d Cir. 1974) (claim stated against a doctor who threw away a prisoner's ear and stitched up the stump)." Nance v. Kelly, supra, 912 F.2d 607 (*Pratt, J.*, dissenting).

Second, the government official must act with a sufficiently culpable state of mind. Wilson v. Seiter, supra, 501 U.S. 297; Faraday v. Commissioner of Correction, supra, 288 Conn. 338. In a case such as this, a "sufficiently culpable state of mind" is "one of deliberate

12

indifference to inmate health or safety." (Citations omitted; internal quotation marks omitted.) Farmer v. Brennan, supra, 511 U.S. 834. "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Faraday v. Commissioner of Correction, supra, 338; see also Farmer v. Brennan, supra, 837. Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not [does not violate the eighth amendment]." (Internal quotation marks omitted.) Faraday v. Commissioner of Correction, supra, 338, quoting Farmer v. Brennan, supra, 838.

Accordingly, to establish a claim of deliberate indifference in violation of the eighth amendment, the petitioner must prove that DOC's actions constituted "more than ordinary lack of due care for the prisoner's interests or safety." Faraday v. Commissioner of Correction, supra, 288 Conn. 338-39, quoting Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). "Deliberate indifference is a stringent standard of fault requiring proof of a state of mind that is the equivalent of criminal recklessness." (Citations omitted; internal quotation marks omitted.) Faraday v. Commissioner of Correction, supra, 339. Mere professional negligence is insufficient to meet the petitioner's burden. Id., 339–40. Consequently, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the [e]ighth [a]mendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, supra, 429 U.S. 106. However, medical malpractice can rise to the level of deliberate indifference when the malpractice involves "culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious

disregard of a substantial risk of serious harm." (Internal quotation marks omitted.) Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir.1998); Faraday v. Commissioner of Correction, supra, 288 Conn. 340. The fact that a doctor may render substandard care or that an inmate disagrees with the level or manner of care rendered "does not amount to a constitutional violation [and] falls short of cruel and unusual punishment." Faraday v. Commissioner of Correction, supra, 344. It is well established that as long as the treatment given is adequate, the petitioner's preference for a different treatment does not give rise to an eighth amendment violation. Chance v. Armstrong, supra, 703. The "essential test is one of medical necessity and not one simply of desirability." (Internal quotation marks omitted.) Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986).

It cannot be seriously disputed that "a congregate prison environment is inherently unsuited to protecting against the COVID-19 virus." United States v. Gonzalez, No. 3:17-CR-00062 (JAM), 2020 WL 2511427, at *3 (D. Conn. May 15, 2020). However, the fact that Ms. Griffin is incarcerated and is susceptible to serious illness if she contracts COVID-19 does not meet the stringent standard of deliberate indifference. Ms. Griffin has not yet contracted COVID-19, nor has any other inmate at York CI. Under similar circumstances, courts have rejected requests for compassionate release. See United States v. DiMartino, No. 3:14CR175 (AWT), 2020 WL 2307648 (D. Conn. May 8, 2020) (no compelling reason because, inter alia, as of April 28, 2020, there were no known current inmate or staff cases at the correctional facility); United States v. Vence-Small, No. 3:18-CR-00031 (JAM), 2020 WL 2214226, at *1 (D. Conn. May 7, 2020) (extraordinary and compelling reasons did not exist where petitioner "has not shown that any of the staff or inmates at her prison facility are infected with the COVID-19 virus"); United States v. Foreman, supra (granting compassionate release due to underlying

14

conditions and positive cases at facility, but suggesting that if petitioner "had been housed at a facility without any cases of COVID-19, perhaps her underlying medical conditions would not have warranted compassionate release"); United States v. Mack, No. 17-CR-6159L, 2020 WL 2461978, at *1 (W.D.N.Y. May 13, 2020) (no compelling reasons in part because no positive cases at facility); United States v. Shkreli, No. 15-CR-637 (KAM), 2020 WL 2513521, at *2 (E.D.N.Y. May 16, 2020) (same); United States v. Hendry, 2020 WL 2129246, at *2 (S.D. Fla. 2020); United States v. Cooper, 2020 WL 2064066, at *3 (D. Nev. 2020); United States v. Bhamani, 2020 WL 1974201, at *2 (E.D. Cal. 2020); United States v. Feiling, 2020 WL 1821457, at *7 (E.D. Va. 2020).

Further, some courts have even denied requests for compassionate release when there have been positive cases at the facility, because the petitioners have not demonstrated that the facility is unable to manage their medical needs. United States v. Hull, No. 3:17-CR-132 (SRU), 2020 WL 2475639, at *3 (D. Conn. May 13, 2020) (relief denied in part because petitioner "has not sufficiently demonstrated that FCI Fort Dix is incapable of managing the COVID-19 pandemic or of providing proper care should he contract the virus"); United States v. Gamble, No. 3:18-CR-0022-4 (VLB), 2020 WL 1955338, at *5 (D. Conn. Apr. 23, 2020) (release denied in part because petitioner "has not shown that the BOP cannot adequately manage the pandemic or treat [him]"); United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (release denied because petitioner "has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within [his] correctional facility, or that the facility is specifically unable to adequately treat [him]").

Exhibits submitted by the respondent demonstrate that DOC is aware of Ms. Griffin's many medical conditions, treating them appropriately at this time. With respect to COVID-19, the DOC is taking steps to ensure that all inmates at York CI, including Ms. Griffin, remain healthy and has established protocols to prevent and minimize the spread of COVID-19, including providing PPE to incarcerated individuals and staff. These actions by DOC do not establish deliberate indifference and thus, there is no substantial likelihood of success at this time.

The motion must be denied.

/s/ JN. 439590
Bhatt, J.

Mailed to:
Madeline Griffin
Reporter of Judicial Decisions

Emailed to:
Atty Bansley
Atty Strom
Atty Grosso
Atty Satti
Atty Proscino

by: Kathryn Hackford,
Asst. Clerk
5/20/2020

16